# CASES ADJUDGED IN UNITED STATES COURT OF CUSTOMS APPEALS

UNITED STATES *v.* BRIGGS MANUFACTURING Co. (No. 2672)[1]

COMMERCIAL DESIGNATION—VENEERS OF WOOD—PLYWOOD.

Common and commercial meanings presumptively coincide, and a proponent of the contrary must show such contrary and that it is definite, uniform, and general with dealers in such merchandise. A veneer of wood (par. 403 Tariff Act of 1922) is a thin leaf of a more valuable or beautiful wood to be glued to a cheaper wood. Merchandise made by gluing together three sheets of cottonwood so that the grain of the outer sheets runs across that of the inner one, used as lumber for many purposes in order to secure lightness and strength, was classified by the collector as "manufactures of wood," under paragraph 410, Tariff Act of 1922. A claim of commercial designation as veneer is not made out by showing that it is variously known as veneers of various plies, three-ply cottonwood veneer, three-ply veneer, built-up veneer, panels, built-up wood, plywood, or veneer panels; and such claim is negatived by proof that, commercially, a veneer is one sheet of wood. The presumption of correctness attendant upon the collector's classification was not rebutted.

## United States Court of Customs Appeals, April 17, 192

APPEAL from Board of United States General Appraisers, G. A. 9030, T. D. 41098

[Reversed.]

*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument March 30, 1926, by Mr. Carter and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The importer made nine entries of merchandise at the port of Detroit, under the Tariff Act of 1922. The entries described the goods as "cottonwood veneer panels" in two instances, "cottonwood veneer," in four, "built-up wood," in one, and "three-ply cottonwood veneer" in two. The collector, in each case, classified the same for duty as manufactures of wood under paragraph 410 of said act at

[1] T. D. 41526

33⅓ per centum ad valorem.   The importer protested, claiming the goods to be properly dutiable under paragraph 403 of said act at 20 per centum ad valorem as veneers of wood.   In his reports made in transmitting said protests to the Board of General Appraisers, the collector describes the goods in protest No. 990970–1953 as "cotton-wood veneer panels," in No. 511–G/1976 as "cottonwood veneer," in Nos. 17489–G/1999 and 22537–G/2005 as "three-ply cottonwood veneer," and in No. 22536–G/2007, as "cottonwood veneers."   The Board of General Appraisers sustained the several protests and the Government appeals.

Paragraphs 403 and 410 are as follows:

PAR. 403. * * *   veneers of wood and wood unmanufactured, not specially provided for, 20 per centum ad valorem.

PAR. 410. Spring clothespins, 15 cents per gross; house or cabinet furniture wholly or in chief value of wood, wholly or partly finished, wood flour, and manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for, 33⅓ per centum ad valorem.

The merchandise imported here, as shown by the official samples, is composed of three thin layers of cottonwood, glued and pressed together, the middle layer, known as the core, being laid with the grain at right angles to that of the other two layers.   The whole has a thickness of about three thirty-seconds of an inch.   The testimony offered before the court below shows that similar material may be made of any kind of wood, from the most expensive mahogany or walnut to the cheapest varieties.   In some cases the thin strips are sawed from planks or logs, but the usual method of manufacture is to place a log in a lathe.   The log is then caused to revolve and by means of a knife or blade a thin strip of wood is shaved from it as it revolves, varying in thickness according to the wishes of the operator. These strips are described by one of the witnesses as, at times, a half a mile in length.   After coming from the first operation, these strips are placed upon tables and cut to commercial sizes, which are usually about 42 by 66 inches.   They may be made, however, in all sizes and are found in commerce from very small sizes up to pieces as large as six feet in width and fourteen feet in length.   The shipments here involved were 42 by 66 and 42 by 60, inches.   One of these cut strips is then coated with glue on both sides and is inserted between two other strips, as has been said, with the grain of alternate layers at right angles to each other.   The material is then thoroughly pressed together and dried.

There are in the manufacturing process, as detailed by one witness, at least seven different operations before the material is a completed product.   It is made of various thicknesses and from three layers of wood to twenty-four layers.   This material has many uses.   It is used in the manufacture of boxes, in backing and trimming automo-

bile bodies, in making door panels, interior panels, desks, table tops,. piano bodies, drawer bottoms, chair seats, case and mirror backs, office partitions, and in aeroplane and launch construction, for fuselage and bulkheads; in fact, in almost all mill or construction work, where lightness and great strength are required, this material is largely used, and for such purposes is preferable to ordinary lumber.　Wherever it is so used, it is used as a building or cabinet material, not as a material to be used in overlaying other building material.　There is some testimony that at times this material is used to cover cheap woodwork in doors, or to produce sound-proof doors, but aside from this the use is as above indicated.　The testimony is practically uncontradicted that when it is desired to cover a cheaper wood in furniture or cabinetmaking with a better material, but one thin layer of wood is used.

The collector having classified the goods as manufactures of wood, under paragraph 410, it devolved upon the importer, if his protests were to be sustained, to establish the incorrectness of the collector's classification as such and the correctness of the classification of such goods as "veneers of wood," as claimed by importer, under said paragraph 403.　To do this, the importer introduced testimony in the court below which, it is argued, shows commercial designation of the goods imported as veneers of wood.

For many years it has been the well understood rule of legal construction in customs cases that the common and commercial meanings of a word or term used in a customs law are presumed to be the same unless it is otherwise shown, and that upon him who claims a different commercial meaning devolves the burden of making good his contention.　To do that, it is incumbent to show that the given word or term has a definite, uniform, and general meaning among those who are wholesale dealers therein which is different from its ordinary meaning.　*United States* v. *Walter*, 4 Ct. Cust. Appls. 95; *Maddock* v. *Magone*, 152 U. S. 368.

The common and ordinary meaning of the word "veneer" is thus given by the following authorities:

Webster's New International Dictionary, 1925—

Veneer, n. 1. A thin leaf or layer of a more valuable or beautiful material for overlaying an inferior one, esp. such a thin leaf of wood to be glued to a cheaper wood.

Funk & Wagnalls New Standard Dictionary, 1925—

Veneer, n. 1. A thin layer of rare or beautiful material, as wood, stone, ivory, or mother-of-pearl, fastened upon a commoner surface to produce a rich artistic effect.

It becomes apparent, therefore, that the material before us is not veneer, either in the ordinary meaning of the word or in its use.

The testimony produced by appellee on the matter of commercial designation is briefly summarized as follows:

E. W. Carroll, an official of the importer, stated that the material was known in his factory in Detroit as veneer of various plies, but he had never bought or sold it.

Tunis E. Stinson, of the City Lumber Co. of Detroit, stated that he had bought and sold veneers of various kinds for 27 years; that three-ply cottonwood veneer is the uniform and general trade name applied to it; he had never sold any at wholesale, and had bought only from companies in Grand Rapids, Saginaw, and Detroit, Mich.; that the goods imported would not be known as plain veneer.

M. W. McAlonan, superintendent of the Andrew C. Sisman Co., of Detroit, stated he had purchased this material at wholesale, for ten years, at Grand Rapids and Detroit, Mich.; that the general, uniform name applied to the same is "three-ply veneer;" that he had never sold any; that one thickness of wood would be called veneer and the imported material three-ply veneer.

Nelson C. Johnson, also employed by the Sisman Co., stated that he had bought from five to ten thousand feet of the imported material annually for 25 years as "veneers;" that the material would be ordered as "three-ply veneers," and that one ply would be known as a plain veneer; in ordering one would not get the imported material without specifying "three-ply." He had not sold the material.

Arthur Hood, connected with the company from whom the importers purchased the goods in question, stated that he made the sales of their manufactured material and has sold it as "three-ply veneer;" that he has sold probably millions of feet of it; that the single strips are called "plain veneer;" that the imported material has also been called "built up veneer." "Panels," "built up wood," and "plywood," have also been used by the trade to designate this material, although the word "plywood" is more confined to the New York market.

John E. Lowry, a boat builder of New York, stated that during the World War he had purchased, through a purchasing agent, but not personally, from 40,000 to 50,000 feet of this material annually; that the samples are what he knows and orders in the trade as "three-ply veneers;" that the single sheets are called "veneers;" that the terms "plywood" and "three-ply veneer" are interchangeable; that he does not come into contact with the trade, personally.

Willard Winslow, an importer and seller of veneer woods for 44 years, stated that the ordinary way of ordering the goods imported here would be as "three-ply veneer;" that the words "plywood" and "three-ply veneer panels" are also used; that the word "veneer" has always been used to designate one layer, but when the use of built up materials began, people continued to call them veneers;

that the word "panel" is used to designate this material when it is wide; that the single sheets are called veneers.

Norman E. Donnelly, a yacht builder of New York, had purchased small quantities of material made up as that imported here, in New York, for some four years, but had sold none; his firm considered the imported material to be three-ply veneers; the single layer introduced in evidence was, in his opinion, not veneer.

To meet this testimony, the Government called six witnesses, who testified, in substance, as follows:

Lawrence Ottinger, associated with the largest wholesale dealer in wood veneers and plywoods in the United States, stated that he had sold these products for about five and one-half years at wholesale in all parts of the country; that, at the time of the enactment of the Tariff Act of 1922, there was a well-recognized article known to the trade over the entire country as veneer, which consisted of a strip of wood taken from a log by a rotary cut or by slicing or by sawing, which ran from $\frac{1}{40}$ inch to $\frac{5}{16}$ inch in thickness; that the official samples do not come within that definition, but are known as plywood or veneer panels; that they do not have the characteristics, qualities, or uses of veneers, except occasionally.

Charles G. Quinley, of the Frost Veneer & Seating Co. (Ltd.), with factories in Vermont and Wisconsin, manufacturers of plywood panels and tops for over 40 years, stated that he had been selling plywood at wholesale for 10 years in the New England and Middle States; that there was a well recognized distinction in the trade between plywood and veneer; that plywood in the trade is two or more sheets of veneer glued together; that the official exhibits are plywood; that there is an association known as the Plywood Manufacturers Association, comprising many manufacturers of both veneers and plywood; that he has never known material such as the official exhibits to be bought or sold as veneer; that he has heard the term three-ply veneer, which means a plywood or panel or top made of three sheets glued together; that veneer is one thickness of wood.

James J. Dunn, a representative of the Haskelite Manufacturing Corporation, manufacturers and sellers of plywood, had made wholesale sales of their products throughout the United States prior to 1922; that such material was so sold to the trade of the United States under the name of plywood; that he has heard the expression "veneer panels" or "three-ply panels."

J. C. Wickliffe, a member of Ichabod T. Williams & Sons, a large importer and manufacturer, and a purchaser in the Bureau of Air Craft during the World War of veneers and plywoods, had sold veneers at wholesale throughout the eastern half of the United States and in England; that the name "veneer" in the trade means a thin piece of wood removed from the fletch by a process of sawing, slicing,

or a rotary method; that the official samples, except the single piece, would not be deliverable on an order for veneer; that plywood is an article made from veneer; that the terms "three-ply veneer" and "five-ply veneer" or "panels" are sometimes used in place of "plywood."

Edward Moffat, connected with William L. Marshall & Co., dealers in fancy woods and veneers, had sold veneers at wholesale for 30 years throughout the United States; that the official samples are not veneers, but built-up stock or plywood; that a single sheet is veneer and several pieces glued together are something else; that he has heard the term "three-ply veneer" and other similar names applied to built-up veneer.

The court below heard this testimony and concluded that the importer had maintained the burden of proof assumed by him and had established a commercial designation of the goods imported as veneers of wood. We are mindful of the weight to be attached to that finding and that it ought not to be reversed unless it seems to be unsupported by any evidence or is clearly against the weight of the evidence. *Pritchard* v. *United States*, 2 Ct. Cust. Appls. 247; *United States* v. *Borgfeldt*, 1 Ct. Cust. Appls. 255. But, reluctant as we are to disturb it, we can not come to the conclusion, after a careful examination of the record, that it ought to stand.

When the matter came on to be heard by the court below, the presumption was that the classification of the imported goods as manufactures of wood was correct. It was essential that the importer prove, by a preponderance of the testimony at least, if he were to maintain the issue made by him, that in the trade and commerce of the country the term "veneers of wood" had a different meaning from its ordinary meaning, that such designation included the goods imported here, and that such designation was general, definite, and uniform throughout the trade. *United States* v. *Walter*, 4 Ct. Cust. Appls. 95; *Revillon* v. *United States*, 2 Ct. Cust. Appls. 209; *United States* v. *Nordlinger*, 121 Fed. 690 (692). But two of the witnesses called by the importer, Arthur Hood and Willard Winslow, seem to have had such a general knowledge of the trade of the country as would qualify them to speak of the practice and nomenclature of the trade generally, and they show that the product is called "three-ply veneer," "panels," "built-up wood," and "plywood," while they identify the single strip as "veneers." On the part of the Government, the witnesses, without exception with extensive knowledge of the trade and well qualified, state that while the material here is sometimes called "three-ply veneer," its general trade name is "plywood" and that a "veneer," in the trade, is a single strip of wood.

The court can not escape the conclusion, in view of this testimony, that the importer has not only not maintained his burden of proof,

but that the clear preponderance and weight of the evidence is contrary to importer's contention.

But, were the facts conceded as testified to by importer's witnesses, we must inevitably come to the same conclusion. To prove that an article is known commercially as "three-ply veneers," or "three-ply veneer panels," or "plywood," is not a sufficient showing that it is commercially known as "veneers of wood." It lacks that clear and definite quality which such proof must always have. Where the testimony is vague and indefinite, commercial designation has not been established. T. D. 33697, 29 Treas. Dec. 203; *United States* v. *Nordlinger, supra; Hampton, jr., & Co.* v. *United States,* 12 Ct. Cust. Appls. 490; *United States* v. *Weiss,* 13 Ct. Cust. Appls. 14, T. D. 40860; *United States* v. *Walter,* 4 Ct. Cust. Appls. 95.

In view of our conclusion that the finding of the court below is contrary to the weight of the evidence, it will not be necessary to discuss the other matters suggested and argued here.

The judgment of the court below is *reversed.*