DRAEGER SHIPPING CO. ET AL. *v.* UNITED STATES (No. 2935)[1]

[1] T. D. 42644.

United States Court of Customs Appeals, March 13, 1928

*Allan R. Brown* for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*Ralph Folks* and *Fred J. Carter*, special attorneys, of counsel), for the United States.

[Oral argument October 11, 1927, by Mr. Brown and Mr. Carter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND. and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

Two protests, one by each of the above-mentioned appellants, are involved in this case, but the issues raised thereby are the same and involve the interpretation of paragraph 1420 of the Tariff Act of 1922, which we quote in full.

Furs dressed on the skin, excepting silver or black fox furs, not advanced further than dyeing, 25 per centum ad valorem; plates and mats of dog and goat skins, 10 per centum ad valorem; manufactures of furs, excepting silver or black fox, further advanced than dressing and dyeing, prepared for use as material, joined or sewed together, including plates, linings, and crosses, except plates and mats of dog and goat skins, and articles manufactured from fur, not specially provided for, 40 per centum ad valorem; silver or black fox skins, dressed or undressed, and manufactures thereof, not specially provided for, 50 per centum ad valorem; articles of wearing apparel of every description partly or wholly manufactured, composed wholly or in chief value of hides or skins of cattle of the bovine species, or of dog or goat skins, and not specially provided for, 15 per centum ad valorem; articles of wearing apparel of every description wholly or in part manufactured, composed wholly or in chief value of fur, not specially provided for, 50 per centum ad valorem.

The merchandise covered by these importations consists of kid-skin crosses, that is, kid skins not further advanced than dressing and dyeing, prepared for use as material, and sewed together in the form of crosses.

The issue is whether they are plates of goat skins and dutiable at 10 per centum ad valorem under the second provision in paragraph 1420, or are manufactures of furs further advanced than dressing and dyeing, prepared for use as material, joined or sewed together, including plates, linings, and crosses, except plates of goatskin, and dutiable at 40 per centum ad valorem under the third provision of the paragraph, as assessed by the collector and claimed by the Government.

In *Wanamaker* v. *United States*, 13 Ct. Cust. Appls. 93 we had before us the question of whether dyed kid-skin jackets, which were

wearing apparel, were dutiable under the last provision in the paragraph, as composed wholly or in chief value of fur, or as wearing apparel composed wholly or in chief value of goat skins. The latter contention was sustained in this court. This case is referred to, because therein it was held that in the common meaning the term "goat skins" included the skins of kids.

In *Draeger Shipping Co.* v. *United States*, decided in this court May 27, 1927, 15 Ct. Cust. Appls. 190, T. D. 42234, plates made of kid skins had been classified by the collector under the paragraph as manufactures of fur, further advanced than dressing and dyeing, joined or sewed together, prepared for use as material. His action was protested, importers claiming that the plates, although composed of kid skins, were, nevertheless, plates of goatskin under the statute. The protest was first sustained by the Board of General Appraisers (now the United States Customs Court). Later a rehearing was granted upon the petition of the Government, and further testimony was introduced, as a result of which the court overruled the protests.

Importers appealed to this court, and after a careful review of the testimony by Smith, Judge, we held that the evidence did not warrant the conclusion reached in the Customs Court, its judgment was reversed, and the cause remanded. In that case we again explicitly held that the term "goat skins" used in paragraph 1420 was a general term which, as commonly understood, included the skins of young as well as old goats, and that therefore plates made of kid skins were included in the provision for plates of goat skins in the paragraph. It was further held that the Government had failed to prove that the term "goat skins" as used in the paragraph had a commercial meaning that was different from its common meaning.

In the case at bar the Government states that the testimony upon the subject of the commercial distinction between kid skins and goat skins is similar to that in the case last referred to, because of which it does not here again argue that point. It does not contend that in the common understanding a kid skin is not a goatskin.

The instant case has heretofore been before this court and is reported in 13 Ct. Cust. Appls. 419. The same questions which are presented here stood for determination in the court below. That court had held that the commercial meaning of the term kid skins, or the fact that there was a commercial distinction between kid skins and goat skins, which was established in *Seward* v. *United States*, 9 Ct. Cust. Appls. 4, under a prior statute, was conclusive upon that issue in the case before it, and for that reason overruled the protests. Importers thereupon petitioned for rehearing, pointing out that such conclusion was, obviously, erroneous as matter of law. The petition was denied, and the appeal to us was predicated on the error of law involved in such denial.

In our opinion in the case by Bland, Judge, it was pointed out in effect that one issue was whether the commercial meaning of plates (in the statute) included crosses, concerning which it was said that we would hesitate to pass on the weight of the proof of commercial meaning until the court below had done so. The judgment was reversed, however, and the cause remanded, because of the error in denying the application for rehearing.

Upon the rehearing of the case by the Customs Court much additional testimony was introduced on behalf of both the importers and the Government. The court again overruled the protests. In its decision it did not make any finding as to whether crosses were plates in the commercial meaning of the latter term. Its omission so to do was called to its attention by a seasonable application for rehearing made by importers, in which it was stated that a decision of that question by that court would tend to avoid undue prolongation of the litigation. This application was denied, without any reason being given therefor. One member of the court dissented from its judgment on the merits, as well as from its judgment denying the motion for rehearing.

The testimony received on the rehearing by the Customs Court was supplemental to that first given in the case, both on the issue contended for by the Government that goat skins did not include kid skins, and also on the contention of importers that "plates," as used in the wholesale trade and commerce dealing therein, included "crosses," the burden being upon each party to sustain its respective contention.

Inasmuch as the Government no longer contends that kid skins are not goat skins, it is unnecessary to consider that issue, as we regard it settled in the first two cases cited.

This leaves for consideration but one question: That is, have importers successfully maintained their contention that the trade and commerce of this country dealing in furs, including skins of both young and mature goats, definitely, uniformly, and generally regard a cross as a plate?

Much testimony was taken on this issue at the trial below, and it is fully analyzed in the briefs on both sides. To refer to the same in detail would extend this opinion to an unnecessary length. Upon this question we are entitled to have a finding of the trial court. It has declined to make that finding. The Government urges that the testimony on this issue is so discordant that it can not be held that in the trade and commerce dealing therewith a cross is a plate, and urges that the cause should be again remanded to the trial court for a finding on this question. Importers contend that the record so overwhelmingly shows that in the trade and commerce of this country a cross is generally, definitely, and uniformly known as a

plate, that we should so find and reverse the judgment below without again remanding it for a specific finding on that issue.

In view of the history of this case and the record therein, we think the interests of justice will be promoted by a decision on the merits instead of awaiting the result of a remand for further finding.

The testimony of all the witnesses, whether introduced on behalf of the importers or of the Government, when carefully examined, was to the effect that in the wholesale trade and commerce in this country dealing in furs, including the skins of animals of the goat kind, the word "plate," at and before the passage of the present tariff act, meant skins of animals stitched together in various shapes to be used as material; that crosses made of kid skins were composed of several such skins sewed together in the crude form of a cross; that they were called or known as crosses because of their form; that when so imported they were used as material; and that such crosses were plates.

The testimony unmistakably demonstrates that the word "plates" is a broader term than the word "crosses," but it nevertheless includes the latter. The fact that some witnesses testified that commercially all crosses were plates, but that all plates were not commercially crosses, and that an order for crosses would not be filled by the delivery of other forms of plates, does not make against the commercial classification of crosses as plates.

The case of *Revillon Freres*, v. *United States*, 2 Ct. Cust. Appls. 209, T. D. 32354 is somewhat analogous. There it was pointed out that in the trade furs were not ordered as fur skins, or dressed furs, or furs dressed on the skin, but were ordered in terms indicating the name of the animal producing them, but that they were, nevertheless, furs as that word was commercially known and understood. So here, the fact that an order for crosses or crosses of kid skins would not be satisfied by a delivery of plates does not militate against their being commercially included in the term "plates," because, in the supposed case, the order would call for a specific form of plate, but a plate nevertheless.

Paragraph 348 of the Tariff Act of 1913 contained a provision for "plates, linings, and crosses" not different in legal effect from that found in paragraph 1420. The Government contends that in view of the interpretation placed upon that provision in *Seward* v. *United States*, 9 Ct. Cust. Appls. 4, T. D. 37842 and the implied legislative adoption thereof arising from the enactment of the same expression in paragraph 1420, it should not now be held that a kid-skin cross is commercially a kid-skin plate. Although not so stated by the Government, the result of its contention is that the word "crosses" is not subject to proof of commercial designation, and that we intended to so hold in the Seward case.

A careful examination of our opinion in that case shows the error of this contention. The question there standing for decision was whether kid-skin crosses were manufactures of fur, as held by the Board of General Appraisers, and not plates of goatskin as claimed by importer. The board had found that the words "crosses" and "plates," as applied to articles made of fur skins, had distinct meanings and were not interchangeable, and also that there was a *commercial* distinction between goat skins and kid skins. We affirmed the judgment of the board. It is evident from our opinion that there was no intention on the part of this court to hold that either of the words "crosses" or "plates," as employed in paragraph 348, was not subject to proof of commercial designation. While some of the language in the opinion is rather confusing, especially in that in one part thereof it is assumed that there was a *commercial* distinction between kid-skin crosses and plates of goatskin, yet, this must be understood in connection with the finding of the board "that crosses and plates, as applied to articles made of fur skins, have distinct meanings and are not interchangeable." It is evident that this finding related to the common meaning only. The board did not find that commercially those words had distinct meanings and were not interchangeable. This court did not so hold. At the most we went no further than to point out in effect that this finding of the board was consistent with the statute. Obviously this was so, because the words "plates" and "crosses" unexplained clearly relate to the *form* of an article. The fact that commonly speaking the two words are distinct and not interchangeable does not preclude proof by competent commercial testimony that in the trade and commerce they have the same meaning.

In the Seward case, there being nothing to show that a cross was a plate in trade and commerce, and it having been found that there was a commercial distinction between goat skins and kid skins, it followed, of course, that the exception of plates of goat skins did not carry with it crosses of kid skins, but left them dutiable under the common meaning of "crosses" at the higher rate as manufactures of fur. If it had appeared that a cross was a plate in the wholesale trade and commerce, and that kid skins were goat skins, it follows that the same conclusion would have been reached there as here. Consult *Draeger Shipping Co. v. United States*, 15 Ct. Cust. Appls. 190, T. D. 42234.

It is settled law that both the eo nomine and descriptive terms by which merchandise is described in a Tariff Act are subject to proof of commercial designation, and that when a claimed commercial meaning thereof is shown and found to be general, definite, and uniform, it will be adopted in the classification of the merchandise, unless Congress has in some manner clearly indicated a contrary

intention. *American Express Co.* v. *United States*, 10 Ct. Cust. Appls. 275, T. D. 38680; *La Manna, Azema & Farnan* v. *United States*, 14 Ct. Cust. Appls. 289, T. D. 41908.

The rule that, by the reenactment in the same language of a prior statute, a former judicial interpretation thereof is approved does not apply to commercial meaning, because such meaning is a fact to be proved in each case. *Wanamaker* v. *United States*, 13 Ct. Cust. Appls. 93, T. D. 40939, and cases cited.

Congress having provided in paragraph 1420 that plates of goat skins should be dutiable at 10 per centum ad valorem, and it appearing from the overwhelming evidence in this case that a cross is a plate, it must be held that these crosses are dutiable as claimed by the importer. It seems wholly unreasonable and improbable that Congress intended to subject skins joined or sewed together in the form of a cross to a higher rate of duty than the same skins sewed together in such manner as to produce an oblong form, which is concededly a plate, both being used for identically the same purpose.

Each of the protests involved in this case should have been sustained, and the importations held dutiable at 10 per centum ad valorem under paragraph 1420 of the Tariff Act of 1922. The judgment of the first division of the United States Customs Court is, therefore, *reversed*, and the cause *remanded* for further proceeding not inconsistent with the views herein expressed.