ROSEN, LOWY & LIPSCHUTZ *v.* UNITED STATES (NO. 3571)[1]

United States Court of Customs and Patent Appeals, May 22, 1933

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*Thomas J. McKenna* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument April 3, 1933, by Mr. Place and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Certain pile fabrics known as velours du nord, with wholly cut pile, were imported by the appellants at the port of New York under the Tariff Act of 1930 and were classified by the collector as velvets under subdivision 1, paragraph 1206, of said act, and assessed with duty at 65 per centum ad valorem.

The pertinent portions of the said Tariff Act of 1930 follow:

PAR. 1206. Pile fabrics (including pile ribbons), whether or not the pile covers the entire surface, wholly or in chief value of silk, and all articles, finished or unfinished, made or cut from such pile fabrics:

(1) If the pile is wholly cut or wholly uncut, *if velvets* (other than ribbons), 65 per centum ad valorem; *if other than velvets*, 60 per centum ad valorem;

(2) if the pile is partly cut, if velvets (other than ribbons), 70 per centum ad valorem; if other than velvets, 65 per centum ad valorem;

(3) velvet ribbons, 60 per centum ad valorem. (Italics ours.)

The importers protested the said classification and assessment of duty by the collector and claimed the imported merchandise dutiable under the provision of said subparagraph 1 reading "if other than velvets, 60 per centum ad valorem."

The United States Customs Court overruled the protest and held the goods properly classified and assessed with duty by the collector. The importers have appealed to this court from the judgment of the court below.

---

T. D. 4644.

At the trial below, appellants attempted to show that commercially the merchandise involved was not velvets. Four witnesses testified on this subject for the importer. They also explained the characteristics of the importation and pile fabrics generally. These witnesses testified in substance that in trade and commerce the term "velvets" does not include velours du nord; that velours du nord is of heavier construction than velvet and is woven in one width and is chiefly used for making ladies' coats; that the pile of velours du nord is longer than that of velvet, but that there is no standard as to the length of the pile in either. Some of appellants' witnesses testified that there is a distinct difference between velours du nord and velvet, but that each of the characteristics of velours, when considered separately, is sometimes found in velvets, but that no velvet contains the combination of all the charcteristics which characterize the importation. All of appellants' witnesses testified that merchandise like the importation is always sold and dealt in under the term "velours du nord"; that, in selling, it always bears a label containing the term "velours du nord." One of importers' witnesses, describing the characteristics that made this a velours rather than a velvet, stated that it has a fairly heavy cotton backing, but admitted that velvet also might have a fairly heavy cotton backing. He said that velours du nord has a special pile, yarn dyed. He also admitted that some velvets have a special pile, yarn dyed.

It is shown by the testimony of appellants' witnesses and of those for the Government, also, that anyone familiar with pile fabrics could easily distinguish a velours or velours du nord from other pile fabrics.

The Government introduced two witnesses who qualified as commercial witnesses and who testified on the subject of commercial designation. They were positive that in the trade velours du nord is a velvet, velvet being a generic term and velours du nord being a species of velvet, in the same way that millinery velvet, collar velvet, and Lyons velvet are species or kinds of velvets.

The testimony is in some respects quite contradictory, and the importers in their brief here refer to the contradictory character of the testimony, and state that it is somewhat unsatisfactory to prove commercial designation.

The court below, in a well-prepared opinion by Judge Tilson, after reviewing the testimony in great detail, held the evidence to be insufficient to establish that the merchandise in question was other than a velvet, and cited, among others, the decision of this court in *United States* v. *Frank*, 15 Ct. Cust. Appls. 97, T. D. 42184, in which it was said:

Ordinarily, proof of commercial designation is adduced in the effort to remove an article from a provision where it is *eo nomine* designated to some other tariff designation or to bring it within a designation which would not otherwise include it. But here the attempt is made to remove an article from a generic designation

'by proof that it is not known by the generic designation but by a specific name differing from the generic designation. Such proof is not ordinarily satisfactory. Naturally, structural shapes would not be ordered and sold in the trade by the general designation of "structural shapes." * * · *

After citing and quoting from *Revillon Frères* v. *United States*, 2 Ct. Cust. Appls. 209, T. D. 31948, the opinion by the trial court in this cause says:

> In the case at bar, the evidence shows that velours du nord is not ordered, bought, and sold as velvets. At the same time the record is quite clear that no velvets, whether true velvets or not, are ordered, bought, or sold under one specific name of velvets, but rather under more specific designations, such as transparent velvet, collar velvet, millinery velvet, Lyons velvets, velours du nord, and other such designations. The evidence before us falls far short of establishing that transparent velvet, collar velvet, millinery velvet, Lyons velvet, and velours du nord are not true velvets, within either the common or commercial meaning of that term.

We agree with the decision of the court below. We think the term "velvets" as used in subdivisions 1 and 2 of paragraph 1206, *supra*, is used in the sense which is broad enough to include several different species of velvet, among which is velours du nord.

A consideration of the context of somewhat similar paragraphs in other tariff acts, together with the legislative history pertaining thereto, which has been called to our attention, in our judgment, indicates no intention on the part of the legislature to use the term "velvets" in the provisions at bar in any other sense than is above indicated.

. The dictionary definitions of velours, velvet, and plush, which follow, abundantly support our conclusions herein:

Funk & Wagnalls' New Standard Dictionary, 1931:

> Velours [called also velour]. Velvet or velure. A velvet-like fabric.
> Velvet. A silk fabric closely woven and having on one side a thick, short, smooth nap or cut pile.
> Plush. Long-piled fabric of the velvet order made from cloth, silk, cotton, or wool, or from a combination of two of these.

Webster's New International Dictionary, 1932:

> Velours. One of many textile fabrics having a pile like that of velvet.
> Velure. (F) Velvet or some fabric resembling it, * * *.
> Velvet. A silk fabric having a short close nap of erect threads forming a thick soft pile. * * * Inferior qualities are made with a silk pile on a cotton or linen back.
> Plush. A textile fabric with a nap or shag on one side, longer and softer than that of velvet. It is made of silk, cotton, wool, etc., or a combination of two materials.

It is argued by counsel that if a dressmaker or a coatmaker wanted to purchase velours, they would distinguish between a velours and a velvet; that velours is an article well understood and well known in the trade; and that an order for velvet would not necessarily bring forth the velours desired. This may all be true, but if one wanted

millinery velvet or collar velvet, he would be required to specify the kind or species of velvet desired. If he wanted velours du nord, he would call for a particular kind of velvet. In purchasing jewelry, a ring would be ordered and sold under the name of a ring, and yet it is jewelry, both commonly and commercially.

The judgment of the United States Customs Court is *affirmed*.