(C.D. 2160)

GOULD MONUMENT WORKS *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 29, 1960)

*Stone & Stone*; *Barnes, Richardson & Colburn*, associate counsel; (*William E. Stone, Jr., Joseph Schwartz*, and *James P. Manning* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The two protests involved in this case relate to nine shipments of granite slabs imported from Sweden on which

the collector of customs assessed duty at the rate of 15, 14, or 13½ per centum ad valorem, depending upon the date of importation, under the provision in paragraph 234(a) of the Tariff Act of 1930, as modified by T.D. 52739 or T.D. 54108, for—

Granite suitable for use as monumental, paving, or building stone, not specially provided for, hewn, dressed, pointed, pitched, lined, or polished, or otherwise manufactured * * *.

The protest claim is for duty at the rate of 10 or 9 cents per cubic foot under the provision in the said paragraph 234(a), as modified by T.D.'s 52373 and 52462, or T.D. 54108, for—

Granite suitable for use as monumental, paving, or building stone, not specially provided for:

  *      *      *      *      *      *      *

Unmanufactured, or not dressed, pointed, pitched, lined, hewn, or polished (including that which has been roughly squared merely for the purpose of facilitating its shipment to the United States) * * *.

Counsel for the parties have stipulated that the imported merchandise was not hewn, pitched, pointed, dressed, lined, or polished, within the meaning of paragraph 234(a), *supra*, and, inasmuch as there does not seem to be any question but that the imported granite was suitable for use as monumental, paving, or building stone, the issue has been narrowed down to the question of whether it was, in its imported condition, "otherwise manufactured" or "unmanufactured * * * (including that which has been roughly squared merely for the purpose of facilitating its shipment to the United States)," within the meaning of those terms, as used in the statute, as amended.

The evidence establishes that the granite from which the imported slabs were cut originally came from the earth in the form of large, rough blocks, apparently having two dimensions (height and width) the same as the imported slabs. The blocks were cut into the imported slabs by means of a gang saw, consisting of four or more steel blades, approximately three-quarters of an inch to 1 inch in thickness, driven by a motor in a manner similar to a handsaw, i.e., by back-and-forth, or reciprocal, motion. A stream of water carried steel shot under the blades, and, by a grinding action, the granite was cut. The result was a number of slabs of granite, the endpieces having one sawed face, and the centerpieces having two sawed faces.

The tariff provision in controversy, paragraph 234(a), does not mention sawing as an operation which would be considered as leaving the involved granite in either a manufactured or an unmanufactured state. The effort of the plaintiff at the trial of the issue was to show that the gang sawing of the granite into slabs was performed by the exporter solely to facilitate the transportation of the granite, and did not, in fact, advance it for its intended use, and, hence, left it "unmanufactured." The effort of the defendant was to show that the

gang sawing process corresponded to, or was the equivalent of, or superior to, one or more of the operations which are named in paragraph 234(a) as manufacturing operations and that, consequently, the granite at bar was "otherwise manufactured."

It appears from the record that the granite of commerce is not the large, rough block which is taken from the quarry in the first instance, inasmuch as the size of that block is determined largely by nature and the facilities available at the quarry site. The record indicates that the large, rough block is usually cut into smaller pieces, including slabs, which are the granite of commerce. Such pieces are usually squared and may be of a size from which one or more ultimately finished granite articles may be made, and it appears that usually more than one article may be made from such pieces. In fine, such pieces are the material from which granite articles, such as monuments, are made.

The pieces or slabs can be cut from the large block by various means, among which are splitting or sawing. When such pieces are cut by splitting, the surfaces are rough, whereas when they are obtained by sawing, the surface which has been sawed is smoother than the rough surface resulting from splitting. However, there does not seem to be any question but that, when sawed, the surfaces show saw marks and other indications of the use of the saw.

The record shows that pieces or slabs of granite may be ordered from the quarry either rough or sawed, and, when ordered to be sawed, the cost is greater. While the evidence offered on behalf of the plaintiff would indicate that a sawed surface is never used without being finished by other processes, the evidence offered on behalf of the defendant is that it is not unusual to use the sawed surface, without further processing, as the back of, for example, a monument.

The evidence offered by the plaintiff establishes that in order to bring a gang sawed granite surface such as those on the granite at bar to a completely finished state, i.e., a polished state, seven operations are required to be performed, viz, three grinding operations, with S-330 shot and Nos. 60 and 180 grit abrasives being used successively, two finishing operations, with 3F and 4F finishing compounds being used successively, a buffing operation, with tin oxide as the buffing compound, and a polishing operation with lampblack.

Plaintiff's evidence also establishes that when granite is ordered and received in the condition of a rough cut surface, such as might be obtained by splitting (as appears to be illustrated in a photograph received in evidence as plaintiff's exhibit 6), the first operation performed thereon, when seeking to achieve a finish such as that described above, is a wire sawing operation. A wire saw is one which is apparently operated with a reciprocal motion and uses silicon carbide abrasives as the cutting medium. Such a saw produces a smoother finish than a gang saw, to such a degree that if a wire sawed surface

were to be finished to the state hereinbefore described, the first two grinding operations, i.e., those with S–330 shot and No. 60 grit abrasive, are eliminated, and the process of finishing the surface is begun with a grinding with a No. 180 grit abrasive.

As has been said, the tariff provision in paragraph 234(a) for granite does not mention sawing it any way which would categorize it as an operation which the Congress considered to be a manufacturing operation, or one which would leave the granite unmanufactured. The operations which are named in the provision as manufacturing operations, to wit, hewing, dressing; pointing, pitching, lining, or polishing (some of which have apparently been superseded by or have their counterparts in other methods of treating granite, such as sawing, grinding, and buffing), are operations which, as was said in the decision of this court in the case of *J. T. Steeb & Co., Inc.* v. *United States*, 16 Cust. Ct. 205, Abstract 50810, "dedicate granite to a definite size, shape, and condition," that is to say, cut it to size or shape of the ultimate article to be made therefrom, and/or finish the surface of the granite. *International Granite & Marble Corp. et al.* v. *United States*, 28 Cust. Ct. 245, C.D. 1416.

We are of the opinion that the gang sawing of the large, rough, quarried block, which resulted in the slabs at bar, produced a granite material not dedicated to the making of any particular article, but available for the making of any one or more granite articles which could be made from granite of that size. In other words, *from the standpoint of cutting to size only*, the gang sawing did not advance the granite any further than it would have been advanced if it had been cut from the quarried block by means other than sawing, or if it had been rough cut.

On the other hand, we are of the opinion that the gang sawing placed upon one or two of the faces of the resulting slabs surfaces more advanced in condition than the rough surfaces which would have been there if the granite had been cut into slabs by means other than sawing. The sawing unquestionably effected a degree of leveling of the surface of the granite somewhat akin to the effect of hewing, which, according to the record, is a hand operation the purpose of which is to reduce an extremely rough surface to a rough chipped surface, i.e., a more level surface. As some further evidence of the fact that such sawing constituted an advancement in condition of the granite, it is established that the buyer paid a premium for the sawed granite over the price he would have paid if he had ordered the same granite rough cut.

The evidence of the plaintiff's own method of operations also indicates that sawing is a surface finishing operation. It was established when it was desired to finish the surface of a piece of rough cut granite, the first operation would be a wire sawing of the rough cut sur-

face, followed by grinding, buffing, and polishing operations. While it appears that one or two more grinding operations would be required if it were desired to finish the surface of a piece of gang sawed granite, the sequence and nature of the operations are the same, namely, sawing, grinding, buffing, and polishing. In our view, therefore, the sawing operation, whether it be a gang sawing or a wire sawing, has been established by the evidence as an operation one of the purposes of which is to advance the condition of granite over its unmanufactured state and one which is analogous with the operations specifically mentioned in the statute as manufacturing operations.

Plaintiff has cited, in the brief filed in its behalf, the case of *Lackawanna Steel Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 93, T.D. 39359, for the well-established rule that processes to which a crude or unmanufactured material has been subjected, designed solely to prepare it for shipment, do not advance such material over its crude or unmanufactured state even though such preparation incidentally may advance the material for its intended use.

Although, as we have indicated, we are of the opinion that the gang sawing of the granite slabs at bar had the effect of preparing the granite for shipment in the sense of bringing it into the condition of the granite of commerce, we think the rule of the *Lackawanna* case is not applicable in the present situation for the reason that it does not appear that the gang sawing was performed *solely* to prepare the granite for shipment or that it only *incidentally* advanced it in condition. On the contrary, in view of the fact that the granite of commerce may be obtained rough cut or sawed, we think it does appear that the gang sawing was performed as much for the purpose of putting a level surface on the granite as it was to prepare the granite for shipment, and that the advancement in condition by such leveling of the surface was a *primarily intended* result rather than an *incidental* result of the sawing process.

For the foregoing reasons, the protest claim is overruled and judgment will issue accordingly.