**David M. STUDNER**

v.

**UNITED STATES.**

**C.D. 3679; Protest 61/10149–16143–60.**

United States Customs Court,
Second Division.

Jan. 27, 1969.

Siegel, Mandell & Davidson, New York City (Allan H. Kamnitz and David Serko, New York City, of counsel), for plaintiff.

Carl Eardley, Acting Asst. Atty. Gen. (Sheila N. Ziff, New York City, trial attorney), for defendant.

Before RAO and FORD, Judges, and OLIVER, Senior Judge.

OLIVER, Judge:

The imported merchandise involved herein consists of certain used print rollers which were invoiced as lamp bases. The collector of customs classified the print rollers as articles, not specifically provided for, partly or wholly manufactured, in chief value of metal, under paragraph 397, Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, and assessed duty at the rate of 19 per centum ad valorem.

The plaintiff claims that the articles are properly dutiable as waste, not specially provided for, at the rate of 4 per centum ad valorem under paragraph 1555 of the said tariff act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739.

The pertinent provisions of the statutes involved follow:

Classified under:

Paragraph 397, Tariff Act of 1930, as modified by T.D. 54108:

Articles * * * not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \*

Other, composed wholly or in chief value of * * * brass * * *
....................19% ad val.

Claimed under:

Paragraph 1555, Tariff Act of 1930, as modified by T.D. 52739:

Waste, not specially provided for...........4% ad val.

The record in an earlier case, involving the same importer and substantially the same kind of merchandise, D. M. Studner v. United States, 50 Cust.Ct. 149, C.D. 2404, was incorporated into the case at bar. In that case the used print rollers had only one bearing removed from one end of the roller, and a piece of wood was loosely affixed thereto. They were classified under paragraph 395 of the Tariff Act of 1930, as modified, as print rollers, but were found by this court as no longer marketable as print rollers and were held dutiable as waste under paragraph 1555 of the Tariff Act of 1930, as modified.

That incorporated *Studner* case, supra, in turn included in evidence an exhibit of a print roller from the case of Pelton Enterprises, Inc., and Hoyt, Shepston & Sciaroni v. United States, 44 Cust.Ct. 381, Abstract 63935, also involving like print rollers from which both bearings had been removed, and which had been classified under paragraph 395, as modified. This court there also held that the rollers were no longer suitable for their original purpose and, therefore, were properly classifiable as waste under paragraph 1555, as modified.

The used print rollers in the case at bar had a bearing removed from one end, and then, prior to importation, approximately a quarter of an inch was sawed off with a jig saw, on specific instructions by the importer.

The Government's position herein is that this sawing, done to the importer's specification and order, advanced the print rollers towards a new intended use, and that such advance resulted in a partly manufactured article, not specially provided for, classifiable under paragraph 397, supra.

The record in the case at bar consists of the testimony of the plaintiff, David M. Studner, the sole witness in the case; the entry papers which were received in evidence without being marked; plaintiff's exhibit 1 which is a print roller sample of the merchandise involved herein; plaintiff's collective exhibit 2, being photographs of print rollers involved; and the entire record in incorporated protest 59/11521, reported in 50 Cust.Ct. 149, C.D. 2404.

Mr. Studner testified substantially as follows: He personally selected, purchased, and imported the used print rollers at bar from Denmark. He identified plaintiff's exhibit 1 received in evidence as similar to and representative of the rollers in controversy herein, although said exhibit 1 is stamped at one end as made in Belgium, whereas the importation at bar came from Denmark.

The commercial invoice lists the importation as "856 lamp bases" at $1.68 each, purchased from Fiona, Faarborg, Denmark. Fiona prints and manufactures wallpaper with the rollers. The witness stated that none of the print rollers are exactly alike, varying in size from 3 to 7 inches in diameter and having different designs. Some are more deteriorated than others, having been in warehouses for many years, covered with dust, some are rotted, have cracks, and some designs are missing. After having been used as print rollers for manufacturing wallpaper, they became obsolete and were stored in the factory storeroom from which Mr. Studner made his selections and purchases. The basis of his selection, he stated, was whether a roller had "eye appeal" for his purpose. Prior to importation, Fiona, pursuant to his instructions, removed a bearing from one end of the roller and cut off approximately a quarter of an inch of the roller with a jig saw. The witness admitted that when ordering the rollers, he cautioned the sellers to cut the ends straight. The cost of having the end cut off was included in the purchase price of $1.68 per roller, he testified.

After importation, the plaintiff sold the rollers to dealers, decorators, antique shops, and lamp manufacturers. He saw rollers such as exhibit 1 used as umbrella stands, side tables, stock stands, telephone stands, floor vases, wall decorations, and as book ends, the witness stated. Mr. Studner also supplied photo-

graphs illustrating such uses (plaintiff's collective exhibit 2).

When asked whether in his opinion cutting off the end of the roller advanced it towards its future use, the witness stated, "On the contrary, it is a deterrent" because the cutting was not always done accurately, necessitating a recutting in this country to be of use. In some instances he had to make refunds on rollers which were not cut straight or accurately. The witness also stated on cross-examination that he offered the rollers to his purchasers in the United States as having a straight cut on one end, and that his purchasers "certainly did" need the straight cut on one end.

The witness testified that the importation consisting of the 856 print rollers at bar were not all sold to lamp manufacturers but were "offered to everybody." Some were sold to "decorator and electric dealers." The witness did not know or recall that most of the rollers were sold exclusively to lamp manufacturers.

The witness was shown plaintiff's exhibit 1 and defendant's exhibit A in the case of D. M. Studner v. United States, supra. He stated that he had purchased the merchandise involved therein from the same place that he purchased the merchandise at bar. The record in that case was incorporated upon defense counsel's motion. The witness was referred to page 30 of the record in that case, wherein, testifying there in his own behalf, he had been asked what he did with that particular shipment of 512 print rollers and had answered: "Sold them all to one firm called the Mario Manufacturing Company," and stated that he knew the rollers sold to it were used in the manufacture of lamps. Mr. Studner had testified that "Their only purpose in buying this is that I made an exclusive deal with them, all the rollers I buy from Europe I would sell to them in turn for their promoting them into a lamp promotion all over the country."

The witness had testified in the incorporated case that he continued to sell subsequent shipments of rollers to Mario Manufacturing Company and also sold them by magazine advertisement as a mail-order proposition under his own name; that they had found uses for wallpaper rollers other than for lamps; and that in 1959 he had an exclusive agreement with Mario Manufacturing Company, the lamp manufacturers, but it did not deter him from selling to other decorators and antique stores. When asked by the court if he regarded the uses of the rollers for other than lamp bases as fugitive uses, the witness stated that decorators with imagination have used them effectively for other than lamp purposes.

The court notes that the print rollers in the case at bar are similar to the print rollers in the incorporated *Studner* case and the print rollers in the *Pelton* case, supra. There is, however, one significant factor which distinguishes the case at bar, i. e., the instant print rollers were straight cut at one end with a jig saw prior to importation, pursuant to the specific instructions of the importer. In the incorporated *Studner* case, a bearing was removed from one end of each roller, and a piece of wood was there affixed. In the *Pelton* case, both bearings were removed and thereafter the rollers were imported for manufacture into lamp bases or book ends.

The court held in that *Studner* case, stating at page 157:

It is the opinion of the court, in the instant case, that, as in the *Pelton* case, supra, the print rollers here in issue are "manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else" and, therefore, constitute waste in the tariff sense, as claimed by plaintiff.

It is quite clear to us that the used print rollers in the incorporated *Studner* case and the *Pelton* case were waste, as adjudicated, since they were found incomplete and useless for their original purpose and fit only for remanufacture into something else.

Our chief concern now, however, is to determine the significance of the straight-cutting operation with the jig saw, performed prior to importation, on the specific order of the importer. Specifically, the question is whether this straight cutting of approximately one-quarter inch from a roller which normally had become waste now constituted a step in a remanufacturing process which advanced the rollers towards a new intended use. The collector's classification verifies this latter view when he classified the rollers as articles, not specially provided for, partly or wholly manufactured, in chief value of metal, under paragraph 397, supra. The collector's classification carries the presumption of correctness which presumes the presence of all facts essential to his classification. Kaysing v. United States, 49 CCPA 69, C.A.D. 798. The burden, therefore, is upon the plaintiff to establish that the aforesaid straight cutting does not constitute a step in the manufacture of the rollers towards a new intended use.

Our appellate court has held that, in the tariff sense, waste is a term which includes manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else. It also includes so-called "new waste", which is refuse material resulting from a manufacturing process and which is commercially unfit, without remanufacture, for the purpose for which the original material was suitable. United States v. C. J. Tower & Sons, 31 CCPA 185, C.A.D. 271; Harley Co. v. United States, 14 Ct.Cust.Appls. 112, T.D. 41644. And see The Midwest Waste Material Co. and E. J. Keller Co., Inc. v. United States, 28 Cust.Ct. 8, C.D. 1382.

The exact manipulation on the roller appears from the importer's following testimony:

Q. Was anything done to the rollers after you purchased them in Denmark and prior to importation to this country?—A. Well, my instructions to them are to remove one bearing and to slice approximately a quarter of an inch off one end and stamp the country of origin.

The record shows also that the witness not only ordered that the rollers be straight cut, but that he also sold the rollers as straight cut, being obliged to make refunds in cases where the rollers were not straight cut:

Q. In other words, you had offered the article as having a straight cut on one end to your purchasers in the United States?—A. That goes without saying, I sold them these rollers, and their complaint was that they were inaccurate at one end, and had to be straightened out.

Q. And your buyers needed the straight cut on one end?—A. They certainly did.

The testimony above verifies, in our opinion, that the straight-cutting operation was an important step in manufacture. The testimony of the same witness that the straight cutting was a "deterrent" is not impressive, in the light of the foregoing. The roller was advanced towards its intended use. Nor is it essential for classification of a partly manufactured article, not specially provided for, under paragraph 397 that such article be dedicated to a specific use. Lunham & Reeve, Inc. v. United States, 28 CCPA 268, C.A.D. 153. In the case at bar the cutting step which advanced the rollers would be equally advantageous to manufacturing a lamp base, as to other types of stands specified in the record.

The stress on lamp bases found in the arguments in briefs of both counsel is not significant, particularly so since the collector classified under paragraph 397 as articles, not specially provided for, partly or wholly manufactured, etc. In our opinion, the invoice designations of the rollers as lamp bases is not binding on the court nor significant to the collector's classification. The collector's finding that the rollers are in chief value of brass is not controverted herein.

■ We are convinced from the record also that the straight cutting in the case at bar was not done solely for convenience in shipping, in which event such cutting would not be deemed under the decision an advancement of a partly manufactured article. United States v. C. J. Tower & Sons, 17 CCPA 90, T.D. 43427. Where, as here, an article is advanced in condition for its ultimate use, it is deemed partly manufactured and is no longer waste. Ricks v. United States, 33 CCPA 1, C.A.D. 308; United States v. Geo. S. Bush & Co. (Inc.) et al., 16 Ct.Cust.Appls. 406, T.D. 43131; United States v. Wilfred Schade & Co., 16 Ct. Cust.Appls. 366, T.D. 43092.

In A. N. Deringer, Inc., and Roy Goff & Co. v. United States, 40 Cust.Ct. 261, 265, 266, C.D. 1992, Judge Donlon stated:

> * * * When raw material is "removed from its crude or primary state though it remains a variety of the original material," and is worked into form suitable for use, it is manufactured. United States v. C. J. Tower & Sons, 44 C.C.P.A. (Customs) 1, C.A.D. 626. If the process completes the product for its intended use, it is wholly manufactured. If the process advances the product toward the intended use, but does not result in the final form for the intended use, it is manufactured, but only in part. Chas. H. Demarest, Inc. v. United States, 44 C.C.P.A. (Customs) 133, C.A.D. 650. In either case, it is (if an unenumerated article) dutiable under paragraph 1558 as an article, manufactured in whole or in part, rather than as a raw or unmanufactured article.

Plaintiffs cite certain exceptions to the general principle above stated. One of these exceptions we have already mentioned. A process that is designed solely to prepare an article for transportation, but not for use, does not constitute manufacture, even in part. C. J. Tower & Sons v. United States, 36 Cust.Ct. 282, C.D. 1787. So, too, a process necessary in order that an article in its native state may

be suitable for commerce, may not be a process of manufacture. Quong Lee & Co. v. United States, 20 C.C.P.A. (Customs) 192 [T.D. 45981]. Even though the process intended to put the raw article in form suitable for commerce may also, but incidentally, advance the article for its intended use, the process does not constitute manufacture. Lackawanna Steel Co. et al. v. United States, 10 Ct.Cust.Appls. 93 [T.D. 38359].

In United States v. C. J. Tower & Sons, 44 CCPA 1, C.A.D. 626, certain limestone slabs which were classified as "hewn, dressed, or polished, or otherwise manufactured," were claimed to be properly classifiable as "unmanufactured, or not dressed, hewn, or polished." The limestone was quarried by a method known as wedging which resulted in large rectangular blocks approximately 10 to 15 tons in weight. The blocks were then sawn by means of gang saws into slabs which were of standard stock thicknesses of various inches. The court affirmed the classification, holding that the sawing of the blocks into slabs obviated the need for any like operation by the importer, and that it was not at all apparent that the slabs involved were sawn solely to facilitate transportation. See also Gould Monument Works v. United States, 44 Cust.Ct. 107, C.D. 2160.

In Atlas Export Co. and F. L. Kraemer & Co. v. United States, 43 CCPA 122, C.A.D. 618, involving pieces of onyx polished on one side and on all edges, each piece having a hole drilled in its center, which were classified under paragraph 232(d), Tariff Act of 1930, as "onyx, wholly or partly manufactured into monuments, benches, vases, and other articles * * * not specially provided for," and claimed to be dutiable as slabs of onyx under paragraph 232(b), the appellate court affirmed the trial court's judgment sustaining the collector's classification, stating (at page 126):

> It is clear that Congress intended to include under paragraph 232(d) arti-

cles of the type imported here. If these articles are not lamp bases, they can certainly be said to be partly manufactured lamp bases, even though they may be usable for other purposes. As a matter of common sense, an article which is suitable for use as a lamp base will in the great majority of cases be suitable as a base for a variety of objects, including, as was testified in this case, smoking stands and trophies. It is also conceivable that an article in the appropriate size and shape and condition for use as a lamp base might also be adaptable for a different unrelated use. Many of the other items in the list quoted above would clearly also be adaptable to other uses. For example, a table top might be used as a "panel" or a shelf (see Richard Shipping Corporation v. United States, 17 C.C.P.A. (Customs) 417, 418, T.D. 43865), or a tombstone (if unengraved) might be made into a table top, or a drain board, or a bench. It is abundantly evident that "dedication" to a specific use is not essential to classification under paragraph 232(d).

We have of course examined the cases cited by both the plaintiff and the defendant, and have quoted from those which we deemed pertinent. Based upon the record, the applicable authorities cited, and our examination of the exhibits in evidence, we find and hold that the merchandise in controversy was properly classified by the collector of customs under paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108, as articles, not specially provided for, partly or wholly manufactured, in chief value of brass, at 19 per centum ad valorem. The protest is therefore overruled.

Judgment will be entered accordingly.

FORD, Judge (concurring).

I am constrained to agree with the result of the majority opinion on the basis that plaintiff has failed to overcome the presumption of correctness attaching to the classification of said merchandise. I am of this opinion notwithstanding the fact that the record does establish the print rollers involved herein were basically in the same condition as they were before the one-quarter inch was sawed off. The reason for the removal of one-quarter inch was not established and this coupled with the presumption of correctness requires a finding for the defendant.

It does seem incongruous that very similar rollers imported by the same plaintiff, in the incorporated case, were sold for basically the same uses and held to be waste. However, unless and until there is evidence to establish that the removal of the one-quarter inch from the roller did not advance it towards its intended use, I would overrule the protest.