(C.D. 4841)

Colonna & Co., Inc., plaintiff, v. United States, defendant

Consolidated Court No. 70/50462

(Decided February 6, 1980)

*Lamb & Lerch (Murray Sklaroff* at the trial and on the brief) for the plaintiff.
*Alice Daniel,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, Field Office for Customs Litigation *(Susan C. Cassell* at the trial and on the brief), for the defendant.

WATSON, Judge: This consolidated action challenges the classification of marble and travertine blocks imported from Italy. The marble block was classified as sawed marble under item 514.57[1] of the Tariff Schedules of the United States (TSUS) and assessed with duty at the rate of 40 cents per cubic foot. The travertine blocks were classified as sawed travertine under item 515.24[2] of the TSUS and assessed with duty at the rate of 14.5 or 12.5 per centum ad valorem, depending on the date of entry.

Plaintiff claims that the marble block is properly classifiable as marble, in block, rough or squared, under item 514.51[3] of the TSUS, dutiable at the rate of 22 cents per cubic foot and further claims that the travertine blocks are properly classifiable as unsawn travertine under item 515.21[4] of the TSUS, dutiable at the rate of 7 or 6 cents per cubic foot, depending on the date of entry.

The record of *Domestic Marble & Stone Co.* v. *United States,* 64 Cust. Ct. 360, C.D. 4003 (1970) was incorporated herein.

The imported stone blocks are removed from the quarry by wire sawing, resulting first in a large stone mass of 100 to 200 tons and then in more manageable rectangular blocks of less than 20 tons. A typical block would be about 10 feet long, 3½ feet high, and 3½ feet wide, and would weigh about 10 tons. At the quarry some additional work is normally done to straighten out irregular shapes, remove bumps and recut blocks to eliminate cracks. In the *Domestic Marble & Stone Co.* case, this additional work was considered to be manufacturing and the court held travertine blocks to be manufactured within the meaning of item 515.24. The defendant argues for the *stare decisis* effect of that holding.

---

[1] Marble, breccia, or onyx, sawed or dressed, over 2 inches thick_____ 40¢ per cubic foot.
[2] Travertine, hewn, sawed, dressed, polished or otherwise manufactured, and suitable
for use as monumental, paving, or building stone_____ 14.5% ad val. [1970]
12.5% ad val. [1971]
[3] Marble, breccia, in block, rough or squared only_____ 22¢ per cubic foot.
[4] Travertine, not hewn, not sawed, not dressed, not polished, and not otherwise manufactured_____ 7¢ per cubic foot. [1970]
6¢ per cubic foot. [1971]

However, the court is presently of the opinion that *stare decisis* should not apply because the decision in the *Domestic Marble* case was erroneous. It is unreasonable to hold that massive blocks of stone, which must be utterly transformed after importation into relatively thin slabs, are subjected to manufacture by steps taken at the quarry which merely place the blocks in a rough, merchantable condition and eliminate the need to ship useless, cracked portions and protuberances. The additional shaping of the rough blocks has no direct relation to the dimensions of the finished product. In this important respect the analogies drawn in the *Domestic Marble* case to the cutting of one end of used print rollers and the trimming of palmyra stalks to approximate ordered lengths were defective. In *David M. Studner* v. *United States*, 62 Cust. Ct. 63, C.D. 3679, 295 F. Supp. 289 (1969), the cutting of one end of used print rollers was directly related to the ultimate use of the objects as articles of interior decoration such as lamp bases, umbrella stands, floor vases, etc. In *Chas. H. Demarest, Inc.* v. *United States*, 44 CCPA 133, C.A.D. 650 (1957), the palmyra stalks were trimmed to approximate ordered lengths, an act which directly contributed to the ensuing production of brooms and brushes. No equivalent trimming to size took place here and there was no measurable relation between what was done at the quarry and the final products.

A far better analogy is offered by cane sticks which were stripped of bark, trimmed of valueless portions, dried or seasoned, denoded (removal of joints between the straight sections), sorted, and, in some instances, quartered—all this prior to importation for use in the manufacture of reeds for musical instruments. Nevertheless they were held to be "in the rough." *Rico Products Co. et al.* v. *United States*, 44 Cust. Ct. 100, C.D. 2159 (1960). *Cf. General Freight Services, Inc., et al.* v. *United States*, 74 Cust. Ct. 87, C.D. 4590 (1975) in which frozen "pearl" onions, from which the roots, tops, and outer skin layers were removed, were held not to be cut, sliced, or otherwise reduced in size. *See also The Hothouse Products Corp. et al.*, 21 CCPA 261, T.D. 46789) (1933) in which endive, from which the grower normally removed 20 percent of the outer leaves, was held to be a vegetable in its natural state. *See also E. Dillingham, Inc., et al.* v. *United States*, 61 Cust. Ct. 33, C.D. 3522 (1968) in which the removal of burrs or slivers of steel from axe head forgings was held not to have advanced them beyond forgings.

If there was any doubt in the incorporated record as to the significance of the additional work done at the quarry, the additional testimony herein made it clear that the imported blocks do not possess perfectly straight surfaces and the surface portions of the blocks are rarely, if ever, used. After importation they are normally sliced away as part of the process by which a rank of gang saws makes parallel cuts

to produce slabs from the interior of the block. In retrospect, the rudimentary additional shaping which occurred at the quarry had no direct relation to the final product and was only an eminently reasonable preparation of a bulky natural material for shipment and sale.

It is clear that the sawing done merely to remove stone from the quarry and reduce it to commercial sizes suitable for transportation is not the manufacturing of travertine referred to in item 515.24. The sawing referred to in that provision must be an act of manufacture, not an act of extraction from the earth or a related preparation for shipment and sale. Nor would it be reasonable to read item 514.57 covering sawed marble as including marble in which sawing has been used only for the same basic quarrying purposes and for the preparation of blocks for shipment, because another provision (item 514.51) already exists for blocks of marble in the rough.

Accordingly, it is the holding of the court that the classification of these marble and travertine blocks in the provisions governing those materials when "sawed" was incorrect. Plaintiff has successfully proved that the proper classification for the marble block is under item 514.51 as marble blocks in the rough and that the proper classification for the travertine blocks is as unmanufactured travertine under item 515.21.

Judgment will enter accordingly.