C. T. Takahashi & Co., Inc. *v.* United States

Court Nos. 70/35006, etc.

(Decided February 6, 1975)

Glad & Tuttle (*Edward N. Glad and John McDougall* of counsel) for the plaintiff.
*Carla A. Hills,* Assistant Attorney General (*Frederick L. Ikenson* and *Wesley K. Caine,* trial attorneys), for the defendant.

RE, Judge: In these sixteen protests, consolidated for purposes of trial, plaintiff contests the customs classification, and therefore the

duty assessed on certain merchandise imported from Japan. The merchandise, consisting of plywood panels, is described on the invoices as sizes of ¼″ by 4′ by 7′, or ¼″ by 4′ by 8′ plywood which has been V-grooved unfinished, V-grooved prefinished, V-grooved mismatched prefinished, or V-grooved book-matched prefinished.

The merchandise was classified by the customs officials as plywood, under paragraph 405 of the Tariff Act of 1930, as modified by T.D. 52739, with assessment of duty at the rate of 20 per centum ad valorem. Plaintiff claims that it should have been properly classified as "[m]anufactures of wood * * * not specially provided for" under paragraph 412 of the Tariff Act of 1930, as modified by T.D. 52373, supplemented by T.D. 52476, and hence dutiable at a rate of 16⅔ per centum ad valorem.

The competing tariff provisions may conveniently be set forth as follows:

Classified under:

Paragraph 405, Tariff Act of 1930, as modified by T.D. 52739:

"Plywood (except * * *):

＊　＊　＊　＊　＊　＊　＊　＊
Other_____ 20% ad val."

Claimed under:

Paragraph 412, Tariff Act of 1930, as modified by T.D. 52373, supplemented by T.D. 52476:

"Manufacturers of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

＊　＊　＊　＊　＊　＊　＊
Other (except * * *)_____ 16⅔% ad val."

Simply stated, the question presented is whether plaintiff has borne its burden of proof in establishing that the plywood panels were erroneously classified under the *eo nomine* designation for plywood, and that they should have been properly classified under the tariff provision for manufactures of wood not specially provided for.

It is plaintiff's contention that by the V-grooving "the plywood is advanced to a further state of manufacture and becomes a new product with a use much limited from that of the material [it is] made from." Hence, plaintiff states the question presented to be "[w]hether cutting V-grooves in plywood panels represents a further manufacture of plywood, dedicating the finished product for use only as wall paneling and thus becoming something more than just plywood." It answers this question by asserting that "[c]utting V-grooves advances plywood and creates a new manufactured product, namely wall paneling."

Notwithstanding references to "prefinishing," it is clear that plaintiff relies upon the "V-grooving process" as the process of manufacture which it alleges removes the plywood paneling at bar from the *eo nomine* tariff provision which covers "plywood."

It is to be noted that Congress has established no tariff item that covers "wall panels," "wall paneling" or "plywood wall panels." Hence, the defendant cites the principle of customs law that "where an article is designated eo nomine * * * such designation must prevail over words of a general description, which might otherwise include the article specially designated." *United States* v. *Hatters' Fur Exchange*, 1 Ct. Cust. Appls. 198, 202, T.D. 31237 (1911).

In determining the applicability of an *eo nomine* designation it is well to recall that "Congress legislated for the future and is presumed to have intended to cover all forms of the article, including improved models not known in 1930." *Kaysons Import Corp.* v. *United States*, 56 Cust. Ct. 146, 150, C.D. 2622 (1966). See *Trans-Atlantic Company* v. *United States*, 471 F. 2d 1397, 60 CCPA 100, C.A.D. 1088 (1973). Also, once a court had judicially determined the common meaning of a statutory term it is the judicial policy "to adhere to such common meaning until a legislative change in the statutory enactment in question necessitated a changed determination of such meaning." *United States* v. *North American Mercantile Co.*, 17 CCPA 378, 381, T.D. 43820 (1930).

At the trial, the plaintiff and defendant each called five witnesses. Plaintiff introduced thirteen exhibits and the defendant introduced nine. From the voluminous record and the testimony of all of the witnesses, there can be no question about the nature of the merchandise. The witnesses all described the merchandise without difficulty, and no disagreement existed among them except when they stated their opinion as to its classification. For example, plaintiff's first witness testified that V-grooved wall paneling comes in sizes 4 feet by 7 feet to 4 feet by 12 feet. It contains one-half of a V-groove on the edge so that when laid against another panel the edges cannot be easily detected. The grooves are spaced 16 inches apart in conformity with American building codes, i.e., the American standard 16 inch stud. Also nails may be driven through the panels without leaving unsightly nailheads.

An expert who testified for the defendant indicated that the spacing of the grooves at 16-inch intervals was "a convenient arrangement," but that "this product is not limited to an application of 16 inch stud centers any more than a panel that had no grooves at all in it would be limited to a particular stud spacing." The witness explained any "grooves could be used as well as those that are on 16 inch centers for the attachment by means of nails." Not only may panels be

attached by means other than by nailing, but "furthermore, nails can be countersunk and obscured by putty * * *."

The manufacture of V-grooved wall paneling is the same as the manufacture of plywood with the addition that the panels are inserted in a machine which cuts grooves in the wood and eases the long edges off the panels.

The V-grooving is performed after the plywood panels have been cut to size. The grooves are cut at intervals of 16 inches parallel to the long sides of the panel, and are then painted or otherwise colored.

In the opinion of plaintiff's witnesses V-grooved wall paneling would not be plywood because it has been further manufactured into wall paneling. Notwithstanding an occasional variation, in the opinion of plaintiff's witnesses, it was the V-grooving, rather than the sanding and prefinishing, which brought about a change in the product. All of the testimony, however, indicates that the sanding, prefinishing (a staining, lacquering and drying process), and V-grooving are comparable operations from the standpoint of time, complexity or sophistication.

Much of the opinion evidence of plaintiff's witnesses is founded upon the assertion that plywood that has been V-grooved is limited basically to one purpose or usage, namely, wall paneling. Since V-grooving is not necessary for plywood, they claim that V-grooving is a manufacturing process that advances or converts plywood to something else, i.e., wall paneling. Hence, plaintiff urges the conclusion that "[t]he merchandise at bar has been further manufactured after it became plywood, which further processing has given that merchandise a new name, character and use different from plywood generally." (Plaintiff's brief, page 39.)

Even from the testimony of plaintiff's witnesses, however, the following facts are also clear:

1. admittedly, the merchandise at bar was purchased and invoiced as "plywood";
2. V-grooved paneling, prefinished paneling, prefinished V-grooved paneling have all been advertised as "plywood";
3. the merchandise at bar is "decorative plywood";
4. plywood could be V-grooved and still be considered "plywood," i.e., "it is a form of plywood."

Particular reference may also be made to some of plaintiff's exhibits which indicate that the plywood panels at bar are offered to the public and are commercially known as plywood. For example, plaintiff's exhibit 5 is a promotional brochure which contains pictures of plywood panels. The large pictures of V-grooved plywood panels included in this brochure are advertised or described as "New Tahitian Plywood," "Cut Plank Tahitian Plywood," "Fancy Matched Tahitian

Plywood," and "Select Tahitian Plywood." This brochure promotes "Toyo's Tahitian Plywoods" and "colorful new plywoods from the South Pacific." The written portion states that "Toyo's New Tahitian Plywoods bring exciting new interiors into your homes * * * walls of genuine mahogany * * *. There's no telling what you might accomplish with these new and colorful plywoods!"

Plaintiff's exhibit 6, a brochure of the Asahi Fancy Plywood Co., Ltd., entitled "Asahi Fancy Plywood," is designed to promote the use of plywood paneling and speaks of "the luxurious finish of living rooms, furnitures, offices, restaurants & theaters." The fancy plywood paneling advertised on this brochure also includes two pictures of V-grooved plywood paneling.

Plaintiff's exhibit 7, a promotional brochure of the Noda Plywood Mfg. Co., Ltd., states that "Prefinished Hardwood Paneling, 'Noda-Pecky' * * * is of two types, wall paneling and flush door-skin * * *."

Plaintiff's exhibit 13 is a brochure that promotes "Tech-Guard's Complete Line of Architectural Hardwood Veneered Plywood." It contains pictures of wall paneling with grooves together with an illustration which "shows widths of the eight different veneers used in each Tech-Guard Random Matched panel." It adds that "[t]he spacing shown is to facilitate nailing on 16 [inch] centers. These same separate veneers and groove spacings appear in identical order on successive panels in the set."

The defendant's witnesses testified as to the meaning and definition of plywood. It was agreed that the approved or accepted definitions of plywood can be found in the case of *Borneo Sumatra Trading Co., Inc.* v. *United States*, 311 F. Supp. 326, 64 Cust. Ct. 185, C.D. 3980 (1970). In the *Borneo Sumatra* case the court stated that all of the definitions of plywood "uniformly indicate that the chief characteristics of plywood consisted of a combination of plies of wood arranged with the grain direction of alternate plies at right angles." 311 F. Supp. at 331, 64 Cust. Ct. at 191.

According to the testimony of defendant's witnesses plywood could be interior, exterior, structural or decorative. Structural or construction plywood is designed and intended primarily to add strength and engineering characteristics. Decorative plywood is used to take advantage of its beauty rather than to add to the strength of a structure. The V-grooved plywood panels at bar are a form or variation of "decorative plywood." Prefinished plywood panels, grooved plywood panels and prefinished grooved plywood panels were all, in their opinion, and in the view of the industry, plywood.

One witness, who has taught courses on plywood throughout his academic career, and has supervised students conducting research in the field of adhesive and plywood technology, testified that he knew

of no limitation on the term "plywood." In his "understanding of plywood, it is any product, regardless of what has been done to it, that meets the definition of plywood, involving cross-lamination for purposes of dimensional stability and uniform strength."

It is significant to note that some of plaintiff's witnesses, when asked about "doorskins," testified that they did not consider "doorskins" to be plywood. In their opinion "doorskins" are not plywood but a manufacture of plywood because they "are another further manufactured product made of plywood," and have been committed to a single use.

The examination pertaining to "doorskins" had reference to the case of *B. A. McKenzie & Co., Inc., et al.* v. *United States*, 47 CCPA 42, C.A.D. 726 (1959). In the *B. A. McKenzie* case, the Court of Customs and Patent Appeals affirmed the judgment of this court which sustained the classification of plywood panels, called "doorskins," as plywood. The appellate court concluded that "[t]he manufacture of plywood panels in specified sizes does not change the nature of the product. The resultant 'manufacture' still is plywood as that term is used in paragraph 405 of the Tariff Act of 1930 as amended." 47 CCPA at 46. Of course, in testifying that "doorskins" are not plywood but "another further manufactured product made of plywood," or a manufacture of plywood, plaintiff's witnesses evidenced disagreement with the reasoning and holding of the *B. A. McKenzie* case.

In the case of *Borneo Sumatra Trading Co., Inc.* v. *United States*, 311 F. Supp. 326, 64 Cust. Ct. 185, C.D. 3980 (1970), this court treated at length the nature and characteristics of plywood, and certain principles of law applicable here. It cannot be questioned that the merchandise at bar is fully embraced within the definitions of plywood quoted and enunciated in the *Borneo Sumatra* case. That case discussed at length the meaning of the *eo nomine* provision for plywood, as found in paragraph 405 of the Tariff Act of 1930, under which the plywood panels at bar have been classified. Although it is not necessary to restate either the definitions of plywood, or the other well-established principles stated in the *Borneo Sumatra* case, it is well to note that plywood has been defined in terms of its construction.

Plaintiff's reliance upon *United States* v. *Briggs Manufacturing Co.*, 14 Ct. Cust. Appls. 1, T.D. 41526 (1926) is unavailing since the *Briggs* case was decided before the Tariff Act of 1930. Furthermore, the *Briggs* case did not deal with the definition of plywood. Although the merchandise in the *Briggs* case was in fact "plywood," the question presented there was whether, under the Tariff Act of 1922, it was classifiable as "veneers of wood," or as "manufactures of wood," as classified by the collector of customs. Since the manufacturing process

in making the plywood [gluing and pressing, etc.] consisted of "at least seven different operations before the material is a completed product," the court held the product to be more than veneers, and sustained the classification as "manufactures of wood." 14 Ct. Cust. Appls. at 2. The *Briggs* case, therefore, did not address itself to the meaning of the statutory designation of "plywood." For the meaning of "plywood," under paragraph 405 of the Tariff Act of 1930, one must turn to the later case of *Borneo Sumatra*. See *B. A. McKenzie & Co., Inc., et al. v. United States*, 47 CCPA 42, 45, C.A.D. 726 (1959).

As indicated, the plywood panels at bar are beyond question "plywood" as defined and described in the *Borneo Sumatra* case. Moreover, the mere fact that the plywood panels have been cut and made suitable for a particular use would not necessarily prevent their classification under the *eo nomine* designation for plywood. Consequently, plaintiff's reliance upon the case of *United States v. Dudley*, 174 U.S. 670, 19 S. Ct. 801 (1899) is misplaced. See also cases cited in *Avins Industrial Products Co. v. United States*, 376 F. Supp. 879, 72 Cust. Ct. 43, C.D. 4503 (1974), appeal pending. Hence, in the *Avins* case the court held that "the fact that the instant merchandise has been cut to length and is in certain dimensions making it particularly adaptable for use in producing radio antennas does not take it out of the category wire * * *." *Id.* at 52.

Plaintiff, in its brief, asserts that "[j]udicial authorities substantiate the proposition that cutting represents a process of manufacture." If by that statement plaintiff implies that cutting *per se* removes a product from a statutory *eo nomine* designation, the court does not agree. Plaintiff relies heavily on the case of *United States v. Flex Track Equipment Ltd., et al.*, 458 F. 2d 148, 59 CCPA 97, C.A.D. 1046 (1972). The merchandise in the *Flex Track* case consisted of rolls of arctic track treads that had been classified as belting and belts for machinery. The importers claimed that it was properly dutiable as other parts of motor vehicles. This court concluded that the imported merchandise was designed and used as more than belting for machinery, and therefore sustained the protest. In affirming the decision of this court, the Court of Customs and Patent Appeals noted that the "process of manufacture [had] invested [the importation] with new functions." 59 CCPA at 101. It indicated that the imported track treads did more than transmit motion, "they also give the motor vehicle support, traction, and stability." The quotations of the appellate court from the opinion of the Customs Court show clearly that much more than cutting was involved in the processing of the belting. The belting was not only cut to length, but "holes were punched throughout the width and length of the cut belting." Furthermore, the length, number and spacing of the holes, varied "according

to the size vehicle for which intended * * *." 59 CCPA at 99. The findings of new functions that were made by the trial court about the belting in the *Flex Track* case, cannot be made about the grooved panels at bar.

The other cases cited by plaintiff are also distinguishable. Not only was more than mere "cutting" involved in these cases, but the resulting product acquired new characteristics and a new use different from that which characterized the original material. See *United States* v. *Pittsburgh Plate Glass Co.*, 44 CCPA 110, C.A.D. 646 (1957) (jalousie or glass slats or louvers held to be "manufactures of glass"); *M. Martinez & Co.* v. *United States*, 24 CCPA 285, T.D. 48703 (1936) (bailing ties composed of wire cut to lengths, one end being turned back and twisted so as to form a loop, classified as "manufactured articles").

The case of *David M. Studner* v. *United States*, 295 F. Supp. 289, 62 Cust. Ct. 63, C.D. 3679 (1969) is not helpful since the question there was whether used print rollers which were invoiced as lamp bases were "[a]rticles * * * not specially provided for, whether partly or wholly manufactured" or "[w]aste." "Waste" is a word of art in customs law, and the cutting off of one end of the obsolete print rollers gave it a use different from its original purpose. Hence, as understood in the law of waste, the product had been "remanufactured" and the advancement and new and different use clearly made the product more than waste. See also *Cheltenham Supply Corp.* v. *United States*, 306 F. Supp. 472, 63 Cust. Ct. 271, C.D. 3908 (1969).

The crucial question, therefore, pertains to the applicability of the *eo nomine* designation of plywood. The principle is well established that the *eo nomine* statutory designation, without limitations or a contrary legislative intent, includes all forms of the product. See *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, T.D. 47464 (1935) and cases cited in *Crosse & Blackwell Co.* v. *United States*, 36 CCPA 33, C.A.D. 393 (1948). It is equally well established that an improvement in an article having an *eo nomine* designation does not remove it from classification under the *eo nomine* provision. See *Trans-Atlantic Company* v. *United States*, 471 F. 2d 1397, 60 CCPA 100, C.A.D. 1088 (1973); *Schick X-Ray Co., Inc.* v. *United States*, 64 Cust. Ct. 430, C.D. 4013 (1970); *Giddings & Lewis Machine Tool Co. et al.* v. *United States*, 292 F. Supp. 394, 61 Cust. Ct. 284, C.D. 3612 (1968). Furthermore, if the product is embraced in the *eo nomine* statutory designation, its use does not, *per se*, take it out of that category. See *United States* v. *Page N. Goffigon*, 43 CCPA 172, 175–76, C.A.D. 625 (1956).

The *B. A. McKenzie* case, which dealt with "doorskins," warrants further analysis. The "doorskins" consisted of three-ply lauan plywood imported in panels of rectangular shapes. The panels were manufac-

tured and sold as face panels for use in the manufacture of flush doors. These plywood panels, called "doorskins," were supplied in assorted widths and lengths which varied by two-inch increments corresponding generally to the widths and lengths of doors of standard sizes.

The doorskins were classified by the customs officials as plywood under paragraph 405 of the Tariff Act of 1930, as modified by T.D. 52739, the same tariff provision under which the V-grooved wall paneling at bar was classified. The classification of the doorskins as plywood was sustained by this court, and the importers appealed. The evidence showed that the panels of plywood, in their imported condition, were designed, manufactured, sold and used as parts of flush doors. Hence, the importers contended that the doorskins ceased "to be classifiable as plywood under paragraph 405 since they are manufactures of wood, i.e., unfinished face panels for flush doors." 47 CCPA at 43. The government, on the other hand, maintained that the doorskins had been properly classified under the *eo nomine* provision for plywood, i.e., paragraph 405.

In affirming the classification of the doorskins as plywood under paragraph 405, the appellate court found that "the only physical characteristics which distinguish the imported plywood 'doorskins' from other eighth-inch thick panels of plywood are their length and width dimensions."

After summarizing the evidence the court stated:

> "This evidence does not establish that the dimensions of the imported plywood panels have made them an article which is distinct from plywood and which may no longer be used for a large portion of the potential uses of plywood." 47 CCPA at 45.

Hence, the appellate court expressly agreed with the finding of this court that the imported doorskins "were but rectangular shapes of plywood and were properly classified as 'plywood,' within the *eo nomine* designation of paragraph 405."

Pertinent to the present case is the court's statement that "[w]here a provision of the Tariff Act names an article without terms of limitation, as does the *eo nomine* provision for plywood in paragraph 405, all forms of the article are thereby included." 47 CCPA at 45.

Equally pertinent is the court's quotation from *United States* v. *Astra Trading Corp.*, 44 CCPA 8, 11, C.A.D. 627 (1956), that:

> "The principle is too well established for the citation of references that, in determining the classification of goods, an *eo nomine* designation must, unless a legislative intent to the contrary is clearly indicated, be preferred to terms of general description and to enumerations which are broader in scope and less specific."

In the *B. A. McKenzie* case the plywood panels were known as *doorskins*, and the court therefore also addressed itself to the question of a new name for the imported product. Significantly enough, the court stated that "[t]hough merchandise may be given a new name, this circumstance does not necessarily indicate a new manufacture," and added:

> "The term 'doorskin' undoubtedly is used by the importer to describe an intended purpose for which the plywood panels are imported. However, neither such intent nor the actual uses of the panels as 'doorskins' are alone determinative of the proper tariff classification." 47 CCPA at 46.

The quotation from the *B. A. McKenzie* case may be easily modified as follows to apply to the present case of wall panels. By "wall panels" or "wall paneling," the importer wishes "to describe an intended purpose for which the plywood panels are imported. However, neither such intent nor the actual uses of the panels as [wall paneling] are alone determinative of the proper tariff classification." Hence, plaintiff's reliance upon the *use* of the V-grooved plywood panels is largely misplaced. The record is replete with testimony, and plaintiff's exhibits leave no doubt, that various types of plywood panels, in addition to those in question, are all used for wall paneling.

In the *B. A. McKenzie* case the importers also argued that changes in dimension were "sufficient processing to constitute a manufacture," and therefore the "doorskins" should have been classified as "manufactures of wood n.s.p.f." This argument was expressly rejected, and, citing *J. B. Henriques, Inc.* v. *United States*, 46 CCPA 54, C.A.D. 695 (1958), the court stated that "[e]ach case stands upon its own particular facts." 47 CCPA at 46. As indicated previously, the argument that cutting to length constitutes a sufficient "manufacture" was also rejected in the more recent case of *Avins Industrial Products Co.* v. *United States*, 72 Cust. Ct. 43, C.D. 4503 (1974).

The court, in the *B. A. McKenzie* case, observed that whether an imported article is a manufacture "must depend upon the facts presented in each case to show the nature of the material involved and the degree of processing to which it was subjected prior to importation." It is significant that the court concluded that the "manufacture of plywood panels in specified sizes does not change the nature of the product," and that the "resultant 'manufacture' still is plywood as that term is used in paragraph 405 of the Tariff Act of 1930 as amended." 47 CCPA at 46.

The language of the court in the *B. A. McKenzie* case is particularly pertinent to the present case. Just as cutting to sizes did not "change the nature of the product" of the doorskins, the V-grooving does not "change the nature of the product" of the plywood wall panels.

The question, whether the V-grooving is a sufficient processing to constitute a manufacture, is not answered by assertions that equate processing with "manufacture." All processing involves a "change," but the question is one of degree, i.e., whether the particular processing constitutes a "manufacture" in the tariff sense. As stated by the Supreme Court in *Anheuser-Busch Brewing Association* v. *United States*, 207 U.S. 556, 28 S. Ct. 204 (1908), "[m]anufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor and manipulation." The court indicated that "something more is necessary," i.e., that there "must be [a] transformation," and that a "new and different article must emerge." *Id.* at 562. Hence, in the *Anheuser-Busch* case, even though the corks therein had been subjected to a process that took from one to three days, the Supreme Court, nevertheless, decided that "[a] cork put through the claimant's process is still a cork." *Ibid.*

The Supreme Court in the *Anheuser-Busch* case cited one of its earlier cases which dealt with shells that had their outer layer ground off so as to exhibit the beautiful inner layer. The process consisted of cleaning the outer layer of the shell by acid, then grinding off the the second layer by an emery wheel, and afterward polishing, so as to expose the brilliant inner layer. In this earlier case, *Hartranft* v. *Wiegmann*, 121 U.S. 609, 7 S. Ct. 1240 (1887), the Supreme Court wrote:

> "We are of opinion that the shells in question here were not manufactured, and were not manufactures of shells, within the sense of the statute imposing a duty of 35 per centum upon such manufactures, but were shells not manufactured, and fell under that designation in the free list. They were still shells. They had not been manufactured into a *new and different article, having a distinctive name, character or use from that of a shell*. The application of labor to an article, either by hand or by mechanism, does not make the article necessarily a manufactured article, within the meaning of that term as used in the tariff laws." 121 U.S. at 615. (Emphasis added.)

The processing to which the plywood panels at bar were subjected did not result in a "new and different article, having a distinctive name, character or use * * *." The V-grooved plywood paneling has not been subjected to a manufacturing process that has caused it to lose its identity as plywood, and has become a "new and different" article.

The record reveals that the controverted paneling was known to the trade and advertised as "plywood." It also shows that plywood panels, with or without V-grooving, are used to panel walls. The V-grooved plywood is a form of "decorative plywood," and "decorative plywood,"

which has been subjected to a sanding and prefinishing process, is a form of plywood. It is also clear from the exhibits and testimony that all decorative plywood paneling, whether grooved or ungrooved, is used for the same purposes. No authority has been shown that would warrant granting to one type of "decorative plywood" a different customs treatment than is accorded to the class.

In view of the foregoing, it is the determination of the court that plaintiff has not borne its burden of proof. The court also concludes that the V-grooved plywood panels have been properly classified and dutiable under the *eo nomine* provision for plywood in paragraph 405 of the Tariff Act of 1930, as modified.

Judgment will issue accordingly.