**ARTHUR J. HUMPHREYS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 82–09–01254.**

United States Court of International Trade.

May 3, 1991.

Law offices of George R. Tuttle, Stephen S. Spraitzar, San Francisco, Cal., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, New York City, Saul Davis, Pittsburgh, Pa., for defendant.

DiCARLO, Judge:

Plaintiff challenges the classification of several styles of vegetable fiber panels manufactured and designed to be used as decorative wall and ceiling covering. Customs classified the merchandise as hardboard under item 245.30, Tariff Schedules of the United States (TSUS). Plaintiff asserts the merchandise is properly classifiable as building board under item 245.90, TSUS. In the event the Court finds Customs' classification to be incorrect, Customs offers an alternative classification as laminated building board under item 245.-80, TSUS. The Court finds plaintiff has overcome the presumption of correctness in Customs' classification and will remand this action to Customs if the government wishes to pursue its alternative classification.

## BACKGROUND

The merchandise consists of various styles of rigid panels six millimeters thick; 10 are four feet by eight feet and one is four feet by four feet. The rectangular panels are designed and manufactured for use as wall paneling. The square panel is designed and manufactured for use as ceiling tile.

Some of the wall panels are designed to simulate the appearance of various wooden surfaces. The "Buckingham" style, for example, is designed to simulate formal inlaid woodwork typical of an English library. The "Colonial Pine" style simulates molded knotty pine paneling. All of the wood grain patterns have interior grooving which is either embossed or machined onto the panel during the manufacturing process. These panels have grooves at varying distances with at least one every 16 inches. In addition to creating a decorative pattern, the grooves have the ancillary function of hiding nails used to secure the panels to studs in the wall.

Other styles simulate non-wood surfaces. "Manor House," for example, is embossed with a brick pattern. "Hacienda" has the look of lightly troweled stucco. The ceiling panel is similar to "Hacienda" except that it has interior grooving to give the appearance of 12 inch square tiles.

Several styles of the merchandise have functional edgework. The edgework ensures proper installation to produce the desired pattern. The remaining styles have straight edges because the order in which the panels are installed does not affect the pattern.

Customs classified the merchandise under item 245.30, TSUS, covering various types of hardboard, whether or not face finished. Plaintiff claims the proper classification is under item 245.90, TSUS: "[b]uilding boards, not specially provided for, whether or not face finished: other boards, of vegetable fibers (including wood fibers)...." The government proposes, as an alternative classification, item 245.80, TSUS: "[b]uilding boards, not specially provided for, whether or not face finished: [l]aminated boards bonded in whole or in part, or impregnated, with synthetic resins...."

At the trial, the parties entered into stipulations of fact and the Court made findings of facts on the record. One of the findings the Court made is that 90% of the merchandise is used as wall or ceiling covering. The remaining 10% is used primarily in the construction of furniture and retail displays.

## DISCUSSION

The meaning of a tariff term is a question of law. *Digital Equip. Corp. v. United States*, 889 F.2d 267, 268 (Fed.Cir.1989). Whether a particular article fits within the meaning of a tariff term is a question of fact. *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 788 (Fed.Cir.1988), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988).

 The TSUS provision for hardboard is an *eo nomine* provision. In the absence of limitations or a contrary legislative intent, an *eo nomine* provision includes all forms of the product. *C.T. Takahashi & Co. v. United States*, 74 Cust.Ct., 38, 46, C.D. 4583 (1975); *see also Tomoegawa USA, Inc. v. United States*, 12 CIT 112, 116, 681 F.Supp. 867, 870, *aff'd in part, vacated and remanded in part*, 861 F.2d 1275 (Fed.Cir.1988). An improvement in merchandise provided for *eo nomine* does not remove it from classification under the *eo nomine* designation. *Takahashi*, 74 Cust.Ct. at 46. Nevertheless, if the merchandise is advanced so as to become the article for which the material was intended, it may fall outside the *eo nomine* classification. *See, e.g., A.N. Deringer, Inc. v. United States*, 61 Cust.Ct. 66, 72, C.D. 3530, 287 F.Supp. 1016, 1021 (1968) (wooden wedges used in construction not sufficiently advanced to be classified as a manufacture of wood rather than as lumber).

Plaintiff maintains its merchandise is a form of processed hardboard that has become the article for which the material was intended; in this case, building board. The government counters that since plaintiff's merchandise has commercially significant uses beyond those for building board, it has not ceased to be classifiable as hardboard. Furthermore, the government warns that accepting plaintiff's argument would so enlarge the scope of the TSUS provision for building boards that provisions for similar merchandise will become superfluous.

This Court has previously considered the three TSUS items at issue. *See American Hardboard Assoc. v. United States*, 12 CIT 714 (1988). In *American Hardboard*, Cus-

toms initially classified prefinished lap siding with a plastic locking spline attached to the back as building board under TSUS item 245.90. After a remand, the merchandise was reclassified as laminated building board under item 245.80, TSUS. Plaintiff claimed the proper classification was as hardboard under item 245.30, TSUS. *Id.* at 714.

### I. Hardboard

#### A. Fungibility and the *American Hardboard* Standard

In *American Hardboard*, the court considered the legislative history as embodied in the *Tariff Classification Study* to determine the meaning of the term hardboard. According to the study:

> Hardboard is used chiefly in construction, in cabinet and millwork, in furniture and fixtures, and other fabricated and industrial products, in transportation equipment, for display purposes, in games, toys, and sporting products; also a high-density type of hardboard is used for dies in spinning and forming light-gauge metals, for jigs and templates, and for structural electrical-insulation materials. 4 *Tariff Classification Study* 67.

The court concluded

> that the hardboard designated *eo nomine* is a basic, fungible material capable of being used for a variety of functions.... This legislative history indicated that at some point the material designated as hardboards and provided for *eo nomine* under 245.30, TSUS, may no longer be within that classification because it has been advanced beyond a basic, fungible material and has become a new and different article of commerce.

*Id.* at 716. The court found the merchandise was "suitable *only* for use as interlocking siding in construction...." and was, therefore, "advanced beyond the basic, fungible material known as hardboard...." *Id.* at 717 (emphasis added).

The Court notes that by using the expression "basic, fungible material" in *American Hardboard*, it did not intend to imply that hardboard classifiable under TSUS item 245.30 must be interchangeable

or substitutable with hardboard from another manufacturer in the sense that sand or wheat may be a fungible commodity. Rather, the court meant only that hardboard is an input material commercially susceptible to a variety of uses.

Based on the result in *American Hardboard*, the government maintains that since plaintiff's merchandise is suitable for more than a single use, it is necessarily an input material rather than a manufactured article. Although the *American Hardboard* court found the plastic spline permanently attached to the siding made it "suitable only for use as interlocking siding in construction," this factual finding was addressed to the merchandise at issue and did not state a general proposition of law. Rather, whether merchandise is classifiable as hardboard under item 245.30, TSUS, depends on the factual advancements unique to the merchandise. *American Hardboard*, 12 CIT at 717.

Here, the Court has found that 90% of plaintiff's merchandise is put to its intended use as wall or ceiling covering. The question is whether the use of the remaining 10% is sufficient to make the merchandise an input material rather than a manufactured article.

**B. Dedication to Particular Use**

Plaintiff relies on a series of cases involving marble slabs and articles fashioned from marble for the proposition that 90% dedication to a particular use is sufficient to make merchandise a manufactured article. In *United States v. Quality Marble & Granite Co.*, 48 CCPA 50, C.A.D. 763 (1960), the merchandise consisted of "square, rectangular, and round pieces of marble of three-quarters and five-eighths of an inch in thickness." The marble was polished on one side and the top edges were slightly rounded. The rectangular pieces had many uses. Ninety percent of the round pieces, however, were used as table tops. All of the merchandise was used in its imported condition. *Id.* at 51.

The government contended the merchandise was properly classifiable as wholly or partly manufactured articles. The import-

er claimed the correct classification was as the input material marble slabs. The Court of Appeals found that to use the marble in any way other than in the condition in which it was imported "would nullify part of the work which had already been done on [it]." *Id.* at 53. The court held the merchandise was classifiable as wholly or partly manufactured articles even though it was susceptible to other uses. *See also A.P. Baldechi & Son v. United States*, 56 CCPA 112, C.A.D. 963, 420 F.2d 756 (1969) (following *Quality Marble*).

In *United States v. Selectile Co.*, 49 CCPA 116, C.A.D. 805 (1962), the court faced essentially the identical issue. In this case, however, the merchandise was "often . . . cut to the correct dimensions for the particular installation, either in length or width, or in both dimensions. . . . None of the larger pieces was used in the condition as imported." *Id.* at 118 (quoting opinion of the Customs Court). The court held "the imported merchandise is nothing more than material which appellees stock in sizes most adaptable to their marble installation business. Under these circumstances, . . . the merchandise cannot be considered 'articles'. . . ." *Id.* at 119–20. The court distinguished *Quality Marble* on the fact that 90% of the merchandise in that case was used in its imported condition. *Id.* at 120.

In its brief, the government has made no attempt to distinguish these cases. Nevertheless, the government argues that following *Quality Marble* would produce results contrary to Congressional intent.

Plaintiff also relies on *Permagrain Prods., Inc. v. United States*, 9 CIT 426, 623 F.Supp. 1246 (1985), *aff'd*, 791 F.2d 914 (Fed.Cir.1986), where the merchandise was wood parquet flooring tiles. Customs classified the merchandise as "other wood flooring" and the plaintiff maintained it was properly classifiable as "hardwood lumber, rough, dressed or worked." Testimony at trial established that a *de minimis* percentage of the merchandise was put to a use other than as flooring. *Id.* at 437, 623 F.Supp. at 1255.

The court stated that "if the lumber has been processed to the extent that *it itself*

became the article for which the material was intended, then it is dutiable as a manufacture of wood and not as lumber." *Id.* at 435, 623 F.Supp. at 1253 (quoting *A.N. Deringer, Inc. v. United States,* 61 Cust.Ct. 66, 72, C.D. 3530, 287 F.Supp. 1016, 1021 (1968)) (emphasis in original). The court held the merchandise had been advanced to the degree that it ceased to be lumber and was classifiable as flooring. *Id.* 9 CIT at 435–36, 623 F.Supp. at 1254.

These cases make it clear that merchandise may fall within a classification for manufactured articles even though as much as 10% of it is put to uses inconsistent with that classification. Consequently, the fact that 10% of the panels at issue are put to alternative uses is not dispositive.

The government relies upon *C.T. Takahashi & Co. v. United States,* 74 Cust.Ct. 38, C.D. 4583 (1975) as authority for its argument that the wall panels and ceiling tile are an input material classifiable as hardboard. *See* Defendant's Brief at 38–43. *Takahashi* considered the classification of plywood wall panels that had been decorated with face grooving and edgework. The paneling was known to the trade and advertised as plywood. Plaintiff maintained the proper classification was "manufactures of wood" rather than "plywood." The court held the grooved plywood paneling had not been subjected to a manufacturing process that caused it to lose its identity as plywood. *Id.* at 49.

The *Takahashi* decision emphasized that each case stands upon its own particular facts and that whether merchandise is an article rather than an input material depends upon the nature of the material involved and the degree of processing to which it was subjected. *Id.* at 48 (quoting *B.A. McKenzie & Co., Inc., et al. v. United States,* 47 CCPA 42, 46, C.A.D. 726 (1959)). The manufacturing at issue in *Takahashi* was V-grooving. *Id.* at 49. Here, plaintiff's panels are subjected to more elaborate processing which may include machining or embossing with a stylized textured surface, printing with durable inks, face grooving and edgeworking. The resulting product is far removed from "standard

hardboard" as exemplified by Plaintiff's Exhibit 14B. Plaintiff's merchandise has the look and feel of products as diverse as brick (Plaintiff's Exhibit 16C), roughly dressed wood (Plaintiff's Exhibit 8A) and stone (Plaintiff's Exhibit 3A). *Takahashi* is, therefore, factually distinguishable.

*Takahashi* is also distinguishable because it concerned an *eo nomine* provision for plywood that was without limitation. As a result, any form of plywood would be classifiable under that provision. *Id.* at 46. As the government has argued, under *American Hardboard,* TSUS item 245.30 is not an unlimited *eo nomine* provision but is limited to material commercially susceptible to multiple uses. A form of hardboard that does not have multiple uses is excluded from classification under that item. In this context, the threshold for a commercially significant multiple uses appears to be something more than 10% alternative use.

Having considered Customs' classification both independently and in relation to the plaintiff's proposed classification and the government's alternative classification, *see Jarvis Clark Co. v. United States,* 733 F.2d 873, 878, *reh'g denied,* 739 F.2d 628 (Fed.Cir.1984), the Court finds plaintiff has overcome the presumption of correctness attaching to Customs' classification. *See* 28 U.S.C. § 2639(a)(1) (1988). The imported merchandise has been advanced beyond hardboard; a new and different product has been produced. While 10% of this merchandise is put to a use other than wall or ceiling paneling, that amount is not sufficient to make it a material with a variety of uses. *See United States v. Quality Marble & Granite Co.,* 48 CCPA 50, C.A.D. 763 (1960).

The government raises several objections to this conclusion. First, it contends the variety of uses for the merchandise demonstrates it is merely one form of hardboard. The Court has already found those other uses to be insufficient to make this merchandise classifiable as an input material.

Second, the government asserts this Court's conclusion will conflict with Con-

gressional intent by "eviscerating" many provisions in Schedule 2, Part 3, TSUS. This argument is based on the mistaken assumption that the Court's holding allows articles with divergent uses to be classified as manufactured articles. The Court's holding is based on the controlling authority of the Court of Appeals and is limited to the merchandise at issue in this action. The Court expresses no opinion whether the result would have differed if less than 90% of the merchandise sold was used as wall panels or ceiling tile.

Further, the Tariff Schedules indicate that building boards of plywood or gypsum would not fall within the provision for building board. Plywood is specifically defined in headnote 1(b), Part 3, Schedule 2, TSUS. Building board made of plywood is, therefore, both more specifically described and specially provided for under the provisions for plywood. Similarly, building boards of gypsum or plaster are also more specifically described and specially provided for under the provisions for gypsum and plaster board. The Court's holding, therefore, does not unduly expand the scope of the building board provision.

Finally, the government's reliance on industrial hardboard standards is misplaced. Industrial or commercial standards are useful in ascertaining the commercial meaning of a tariff term. *See Toyota Motor Sales v. United States,* 7 CIT 178, 182–83, 585 F.Supp. 649, 653–54 (1984), *aff'd,* 753 F.2d 1061 (Fed.Cir.1985). In this case, however, the TSUS provision predates the commercial standard. The standard, therefore, does not reflect the congressional understanding of the term "hardboard" at the time the TSUS provision was enacted.

## II. Building Boards

Plaintiff claims the proper classification of its merchandise is under item 245.90, TSUS, covering building boards, whether or not face finished, of vegetable fibers. Building boards are defined in the TSUS as "[p]anels of rigid construction, including tiles and insulation board, chiefly used in the construction of walls, ceilings, or other parts of buildings." Headnote 1(e), Part 3, Schedule 2, TSUS; *American Hardboard,* 12 CIT at 717. There appears to be no dispute as that plaintiff's merchandise is panels of rigid construction chiefly used in the construction of walls, ceilings, or other parts of buildings.

## III. Laminated Building Boards

The government's proposed alternative classification is as laminated building boards under item 245.80, TSUS. The government, however, has not briefed this issue and, in the event the Court finds the merchandise is not hardboard, seeks additional time for discovery and briefing. Plaintiff opposes this request asserting the government should have pursued this issue in a more timely manner.

The government contends it sought no discovery on the lamination issue because it was satisfied with deposition testimony from plaintiff's witness. The government now claims the witness "dramatically changed" his testimony at trial. Accordingly, the government seeks further proceedings on this issue.

At trial, the parties were advised that the Court might refer the case to Customs if it became necessary to reach the lamination issue.

## CONCLUSION

While it is clear that the merchandise has a variety of commercial applications, the Court finds the merchandise has been sufficiently advanced that it is no longer an input material commercially susceptible to multiple uses classifiable as hardboard under item 245.30, TSUS. Consequently, the issue of lamination must be decided. Customs is ordered to advise the Court within 30 days whether it wishes to pursue its alternative classification under TSUS item 245.80. If it so advises the Court, the action will be remanded for appropriate administrative action. If the Court is not so advised, judgment will be entered in favor of plaintiff.