ARTHUR J. HUMPHREYS, INC., Plaintiff,

v.

UNITED STATES, Defendant.

Court No. 82–09–01254.

United States Court of International Trade.

Aug. 16, 1991.

Law Offices of George T. Tuttle, Stephen S. Spraitzar, San Francisco, Cal., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Internl. Trade Field Office, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Saul Davis, New York City, for defendant.

DiCARLO, Judge:

Pursuant to Rule 59 of the Rules of this Court, defendant moves for rehearing of this Court's decision in *Arthur J. Humphreys, Inc. v. United States*, 15 CIT ——, 764 F.Supp. 188 (1991). The Court grants defendant's motion for rehearing and finds the merchandise is not classifiable as hardboard, whether or not face finished, other. Accordingly, judgment is entered in favor of plaintiff.

## BACKGROUND

The background to this case is set forth in the Court's prior opinion. The Court found plaintiff had overcome the presumption of correctness in Customs' classification and the merchandise is not classifiable as hardboard, which is an input material commercially susceptible to a variety of

uses. *Humphreys*, 15 CIT at ——, 764 F.Supp. at 192. *See also* 28 U.S.C. § 2639(a)(1) (1988) (presumption of correctness); *W.Y. Moberly, Inc. v. United States*, 924 F.2d 232, 237 (Fed.Cir.1991) (presumption of correctness).

## DISCUSSION

■ Under Rule 59(a)(2) of the Rules of this Court, "[a].... rehearing may be granted ... for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States." A motion for rehearing is addressed to the sound discretion of the trial court. *Sharp Elecs. Corp. v. United States*, 14 CIT ——, 729 F.Supp. 1354, 1355 (1990); *RSI (India) Pvt., Ltd. v. United States*, 12 CIT 594, 595, 688 F.Supp. 646, 647 (1988), *aff'd*, 7 Fed.Cir. (T) 100, 876 F.2d 1571 (Fed.Cir.1989). Rehearing is appropriate where there is a fundamental or significant flaw in the original proceeding. *Brookside Veneers, Ltd. v. United States*, 11 CIT 197, 197, 661 F.Supp. 620, 621 (1987), *rev'd on other grounds*, 6 Fed.Cir. (T) 121, 847 F.2d 786, *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988).

The purpose of a rehearing is not to relitigate. *Belfont Sales Corp. v. United States*, 12 CIT 916, 917, 698 F.Supp. 916, 918 (1988), *aff'd*, 878 F.2d 1413 (Fed.Cir. 1989). Nevertheless, the Court is mindful of its obligation to see that merchandise is correctly classified. *See Jarvis Clark Co. v. United States*, 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878, *reh'g denied*, 2 Fed.Cir. (T) 97, 739 F.2d 628 (1984). Defendant has raised several new arguments and has more clearly articulated its previous arguments. The Court in its discretion will reconsider its decision.

## I. DEDICATION TO A PARTICULAR USE

Defendant first argues the Court's application of *United States v. Quality Marble and Granite Co.*, 48 CCPA 50, C.A.D. 763 (1960) is incorrect as a matter of law. According to defendant, the *eo nomine* provision for other hardboards, whether or not face finished, includes merchandise which, absent that provision, would fall into the residual provision for building boards not specially provided for. Defendant's Memorandum in Support of Defendant's Motion for Rehearing, 7. Consequently, even if 100% of the merchandise were used as wall or ceiling covering, the *eo nomine* provision for hardboard prevails.

■ This argument is contrary to the decision in *American Hardboard Ass'n v. United States*, 12 CIT 714, 717, 1988 WL 84132 (1988), which held that hardboard is an input material commercially susceptible to a variety of uses. That holding is consistent with the *Tariff Classification Study ("TCS")* statement that "[h]ardboard is used chiefly in construction, in cabinet and millwork, in furniture and fixtures, and other fabricated and industrial products...." 4 *TCS* at 67. As was the case in *American Hardboard*, if 100% of the material were employed as wall covering, it would not be susceptible to a variety of uses such as those listed in the *TCS* and would, therefore, not be classifiable as a form of hardboard.

Defendant next argues that unlike the situation in *Quality Marble*, the TSUS provisions at issue disclose a congressional intention that building boards made of hardboard be excluded from classification as building board. As evidence for this proposition, defendant cites the *TCS* which states: "all fiber building boards (*except hardboard and gypsum board*) are provided in item 245.90 ... [as building boards not specially provided for]." 4 *TCS* at 69 (emphasis added). From this, defendant asserts that hardboard building boards or gypsum building boards are specifically excluded from classification as building boards. Defendant's Memorandum at 8.

■ Defendant's argument ignores the effect of the Court's factual determination that the merchandise has been processed to the extent that it is no longer hardboard. While the merchandise is fiber building board, it cannot properly be said that the *TCS* specifically excludes it from classification under item 245.90, TSUS. Hardboard has a variety of uses; this mer-

chandise does not. Consequently, it is classifiable with all other fiber building boards under item 245.90, TSUS.

Finally, defendant argues because the 10% alternative use of plaintiff's merchandise is not fugitive, this action is distinguishable from *Quality Marble* and *A.P. Baldechi & Son v. United States*, 56 CCPA 112, C.A.D. 963, 420 F.2d 756 (1969). Defendant's Memorandum at 11. *Quality Marble* does not state that other uses of the imported merchandise were fugitive. *Baldechi* was based on an application of *Quality Marble* and did not turn on whether alternative uses of the merchandise were fugitive. Accordingly, defendant's argument is unpersuasive.

## II. ABSURD OR ANOMALOUS RESULTS OF THE COURT'S PRIOR RULING

Defendant maintains the Court's original determination will lead to absurd and anomalous results. Defendant's Memorandum at 12. Defendant's first example of an absurd result is the fact that under the Court's ruling, the merchandise is building board because it is used 90% or more of the time as wall covering. Despite this, face finished plywood, particle board and gypsum board, all of which are used 95% or more of the time as wall covering are not building board.

The Court has stated its opinion that plywood and gypsum board are more specifically defined in the TSUS and that hardboard is a limited classification. Plywood and gypsum board are not similarly limited and, therefore, are in no danger of falling into the basket provision for building board. *See Humphreys*, 15 CIT at ——, 764 F.Supp. at 193.

■ Defendant next argues that the Court's reliance on the use of the merchandise is absurd because as use changes over time, classification of the merchandise may have to change. Building board is defined as being chiefly used in construction. Headnote 1(e), TSUS, Schedule 2, Part 3. Hardboard is an input material susceptible to multiple uses. Use, therefore, is relevant to the classification of the merchan-

dise. The Court assumes Customs has substantial expertise in dealing with use provisions and that no new administrative burden will fall to Customs as a result of this holding. Defendant's argument is, therefore, unpersuasive.

■ Defendant also cites numerous facts to support its assertion that the merchandise is not precluded from the uses to which hardboard and face finished hardboard are put. The Court acknowledges the merchandise is not precluded from these uses and that the merchandise moves in the same channels of commerce at similar prices as hardboard. Nevertheless, the Court is left with the fact that the merchandise does not have a variety of uses and the limitation on the TSUS item for hardboard. Given this limitation and the holding in *Quality Marble*, it is not absurd to classify this extensively processed merchandise as something other than hardboard.

Defendant next argues the definition of "face finished" in Headnote 2 to Schedule 2, Part 3, TSUS requires the Court reverse its prior ruling. Headnote 2 states face finished means "that one or both surfaces of a panel or board have been treated with creosote or other wood preservatives, or with fillers, sealers, waxes, oils, stains, varnishes, paints, or enamels, or have been overlaid with paper, fabric, plastics, base metal or other material." From this, defendant argues a hardboard panel overlaid with base metal that has been edgeworked, machined, embossed and printed with a design would remain classifiable as face finished hardboard. Defendant's Memorandum at 16.

■ In *American Hardboard*, the court held the language "whether or not face finished" does not prevent merchandise which has undergone other sorts of processing from classification under the *eo nomine* provision for hardboard. *American Hardboard*, 12 CIT at 716. Nevertheless, neither the headnote nor *American Hardboard* provide that hardboard which has undergone all of the processes mentioned in defendant's argument remains

classifiable as a form of hardboard. Moreover, while the Court does not decide the question, the use of the disjunctive "or" in the headnote appears to indicate that if hardboard were preserved with creosote *and* overlaid with base metal or otherwise processed, it would be more than face finished. It appears, therefore, the merchandise is something other than face finished hardboard.

III. *AMERICAN HARDBOARD* AND THE COMMON AND COMMERCIAL MEANING OF HARDBOARD

Defendant's last argument is that the Court's ruling is inconsistent with the decision in *American Hardboard* as well as the common and commercial meaning of hardboard. On this point, defendant first maintains the Court erred by comparing the merchandise to "standard hardboard" classifiable under items 245.00 through 245.20, TSUS, rather than to face finished hardboard classifiable under TSUS item 245.30. Defendant's Memorandum at 20.

■ The question before the Court is whether the merchandise falls within the common and commercial meaning of face finished hardboard. Following *American Hardboard,* the Court's analysis centered on whether the merchandise is an input material commercially susceptible to multiple uses. Having found guidance in answering this question in a decision of the Court of Appeals, the Court applied the analysis found in *Quality Marble.* To the extent the Court referred to standard hardboard, *see Humphreys,* 15 CIT at ——, 764 F.Supp. at 192, that reference was for illustrative purposes and did not affect the outcome of the case. The Court finds, therefore, any error it committed in referring to standard hardboard to have been immaterial.

■ Defendant next contends the Court erred in failing to accept the definition of hardboard from an industrial commercial standard ("CS 251–63"). Defendant's Memorandum at 20. The Court rejected defendant's arguments based on CS 251–63 because the industry adopted the standard the year after Congress promulgated the TSUS. CS 251–63 is, therefore, not evidence of Congressional intent. *Humphreys,* 15 CIT at ——, 764 F.Supp. at 193. Defendant offers numerous cases where the Court allegedly relied on subsequent definitions as evidence of Congressional intent. *See, e.g., Daw Indus., Inc. v. United States,* 1 Fed.Cir. (T) 146, 147 n. 4, 714 F.2d 1140, 1141 n. 4 (1983); *Nippon Kogaku, Inc. v. United States,* 69 CCPA 89, 93 n. 2, 673 F.2d 380, 382 n. 2 (1982); *Toyota Motor Sales, Inc. v. United States,* 7 CIT 178, 182, 585 F.Supp. 649, 653 (1984), *aff'd,* 3 Fed.Cir. (T) 93, 753 F.2d 1061 (1985).

The cases defendant cites do not require this Court to give significant weight to a subsequent definition. In *Daw Indus.,* the question was the meaning of the term "prosthesis." The trial court relied on several dictionary definitions but did not state the year of publication for the references. *See Daw Indus., Inc. v. United States,* 5 CIT 12 at 20–21, 561 F.Supp. 433 at 439 (1983). In the next paragraph, the Court looked at the Summaries of Trade and Tariff Information which, because they were published after the enactment of TSUS, the Court stated are not evidence of Congressional intent but may be evidence of administrative practice. *Id.* at 21, 561 F.Supp. at 439.

On appeal, the Federal Circuit agreed with the trial court and did not address the meaning of prosthesis. *See Daw Indus.,* 1 Fed.Cir. (T) at 147, 714 F.2d at 1141. In a footnote, the Federal Circuit cited two medical dictionaries; one published in 1970 and the other in 1981 together with a 1965 and a pre–TSUS 1951 edition of the latter reference. *Id.* at 147 n. 4, 714 F.2d at 1141 n. 4.

In *Nippon Kogaku,* the Court of Appeals cited, in a footnote, a post–TSUS dictionary definition of a term as support for a proposition that was not in question. *Nippon Kogaku,* 69 CCPA at 93 n. 2, 673 F.2d at 382 n. 2 (1982). Despite this reference, the court's analysis focused almost exclusively on the *TCS* which was prepared prior to the TSUS in contemplation of the revised rate tariff schedules.

In *Toyota,* this court stated "the meaning to be given a descriptive term used in a tariff act is that which it had at the time of the law's enactment. A subsequent definition may not be used to expand the meaning of a term, but is an aid to clarifying it." *Toyota,* 7 CIT at 182, 585 F.Supp. at 653 (citations omitted). The subsequently established commercial standard, therefore, does not reflect the meaning of hardboard at the time of the enactment of the TSUS. The Court's analysis of the *TCS* and its prior decision in *American Hardboard* convinced the Court the term hardboard was sufficiently clear to obviate the need for further analysis based on subsequent definitions. Furthermore, defendant's reliance on CS 251–63 is an attempt to broaden the meaning of hardboard beyond merchandise having multiple uses to encompass articles having more limited applications. The Court, therefore, did not err in failing to give the proper weight to CS 251–63.

Defendant's remaining arguments go to the processing to which the merchandise was subjected during manufacturing. Defendant's Memorandum at 25–27. Defendant argues none of the individual processes is sufficient to advance the merchandise beyond hardboard. The Court, however, considered the merchandise in its final condition. Based on its consideration of the merchandise as a whole, as well as the use and marketing of the merchandise, the Court found it to have been advanced beyond the input material hardboard, whether or not face finished.

## CONCLUSION

Defendant's arguments have not convinced the Court that it was in error or that there was a fundamental or significant flaw in the original proceeding. To the extent defendant raised additional arguments in this motion, the Court has considered them and finds them to be reiterations of arguments previously considered or otherwise not persuasive. Accordingly, the Court adheres to the reasoning and decision enunciated in its prior opinion. As defendant has abandoned its alternative classification, *see Humphreys,* 15 CIT at ——, 764 F.Supp. at 193, judgment is rendered in favor of plaintiff.