**THE TIMKEN COMPANY, Plaintiff and Defendant–Intervenor,**

v.

**UNITED STATES, Defendant,**

NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation and NTN Corporation; NSK Ltd. and NSK Corporation, Defendant–Intervenors and Plaintiffs,

American Honda Motor Co., Inc., Honda of America Mfg.,Inc. and Honda Motor Co., Ltd., Defendant–Intervenor.

Slip Op. 98–20.
Court No. 96–12–2686.

United States Court of International Trade.

March 4, 1998.

Stewart and Stewart (Terence P. Stewart and William A. Fennell), Washington, DC, for Plaintiff and Defendant–Intervenor, Timken.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Velta A. Melnbrencis); of counsel: Carlos A. Garcia, Attorney–Advisor, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Washington, DC, for Defendant.

Gibson, Dunn & Crutcher, LLP (Donald Harrison), Washington, DC, for Defendant–Intervenor Honda.

## OPINION

TSOUCALAS, Senior Judge.

In the underlying case, The Timken Company ("Timken") challenged certain aspects of the Department of Commerce, International Trade Administration's ("Commerce") final results of the administrative review, entitled *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan and Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Components Thereof, From Japan; Final Results of Antidumping Duty Administrative Reviews and Revocation in Part of an Antidumping Finding* ("*Final Results*"), 61 Fed.Reg. 57,629 (Nov. 7, 1996). Timken claimed Commerce erred in, *inter alia*, revoking the dumping finding at issue with respect to American Honda Motor Co., Inc., Honda of America Mfg., Inc. and Honda Motor Co., Ltd. (collectively "Honda").

The Court remanded this case to Commerce to investigate possible dumping of relevant Honda tapered roller bearing ("TRB") sales during the period April 1, 1993, through March 31, 1997, and, a determination that Honda's dumping margin has been zero or *de minimis* for this period and pursuant to a request for revocation by Honda, to revoke the dumping finding with respect to Honda. *See Timken Co. v. United States*, 21 CIT ——, 989 F.Supp. 234 (1997). Commerce and Honda moved for rehearing and reconsideration of the Honda issue. Rehearing was held on February 27, 1998.

### Discussion

A motion for reconsideration under Rule 59(a) of the Rules of this Court is within the sound discretion of the Court. *See, e.g., Mita Copystar Am., Inc. v. United States*, 22 CIT ——, ——, 994 F.Supp. 393, 394 (1998). The purpose of a rehearing is not to relitigate a case but, rather, to rectify a funda-

mental or significant flaw in the original proceeding. *See Arthur J. Humphreys, Inc. v. United States,* 15 CIT 427, 427, 771 F.Supp. 1239, 1241 (1991). Pursuant to rehearing in this case, the Court remains disturbed by Commerce's and Honda's conduct, but refuses to expend limited and valuable administrative resources to perform reviews where there is no indication of dumping.

According to Commerce's regulations, it may revoke a dumping finding upon determining that a producer or reseller has not sold the merchandise at issue at less than fair market value for three consecutive review periods, including the instant review period, and concludes that the producer or reseller would not do so in the future. *See* 19 C.F.R. § 353.25(a) (1994).

In this case, Commerce determined that Honda did not dump the merchandise at issue during the three year period of January 1977 through July 1980 and, subsequently, from August 1, 1980, through September 1, 1981, known as the "gap period." *Final Results,* 61 Fed.Reg. at 57,650. However, under transition provisions surrounding a 1984 change in the law requiring Commerce to conduct administrative reviews upon request, if preliminary results were completed but a request for review was not received, Commerce would not issue final results and the preliminary results would have no force or effect. *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan, and Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Components Thereof, From Japan; Preliminary Results of Antidumping Duty Administrative Reviews, Termination in Part, and Intent to Revoke in Part* ("*Preliminary Results*"), 60 Fed.Reg. at 22,353. Because Commerce did not receive a request to review Honda for the 1980–81 period, Commerce did not issue final results finalizing Honda's revocation and the preliminary results for the 1980–81 period and the intent to revoke had no official standing. *Id.*

Finally, in November 1992, Honda requested final revocation from the TRB dumping finding at issue. *Id.* In accordance with Commerce's policy in similar situations where revocation proceedings were begun

but never finalized and a significant backlog existed, Commerce performed an "update" review of Honda covering the most recent one-year period, the 1992–93 review period. *See Final Results,* 61 Fed.Reg. at 57,650. During this period, Commerce again found no dumping for Honda sales. *Id.* Hence, Commerce revoked the outstanding dumping finding on Honda exports of TRBs and certain TRB components, four inches or less in outside diameter, from Japan (the A–588–054 finding). The revocation applied to relevant Honda merchandise entered or withdrawn from warehouse for consumption on or after September 1, 1981, the date of the original tentative revocation, and for which liquidation remains suspended. *Id.* at 57,652.

As the Court stated in its previous opinion, Commerce's decision to revoke the Honda dumping finding is a unique and problematic situation that has not been previously addressed. In the unusual circumstances at issue, in accordance with its regulations, Commerce investigated Honda's relevant TRB sales and concluded that Honda had a dumping margin of zero for the three consecutive years between 1977 and 1980 and during the gap period. However, the Court was disturbed that a preliminary finding for a period ending twelve years before the update review period began constituted a basis for a revocation, especially after Honda ignored the opportunity for revocation Commerce established in its transition provisions. *See Preliminary Results,* 60 Fed.Reg. at 22,353.

As the Court emphasized, under Commerce's transition provisions, if preliminary results were completed but a request for review of the most recent period was not received, Commerce would not issue final results and the preliminary results would have no force or effect. *Timken,* 21 CIT ——, ——, 989 F.Supp. 234, 243 (citing *Preliminary Results,* 60 Fed.Reg. at 22,353). Indeed, in its Preliminary Results to this review, Commerce explicitly stated that "[b]ecause we did not receive a request to review Honda for the 1980–81 period, we did not issue final results, we did not finalize Honda's revocation, and the ... preliminary results and intent to revoke have no official standing." 60 Fed.Reg. at 22,353. As Com-

merce and Honda correctly note, however, there is no indication of Honda dumping for any relevant period and there has been no such finding in either the 1977–80 reviews, the gap period review or the 1992–93 update review. The Court further deems it significant that Timken, which would presumably respond to any suggestion of dumping by Honda, never requested a review of Honda TRB sales. Under these circumstances, the Court refuses to unnecessarily expend limited administrative resources to conduct additional reviews of Honda sales and, therefore, sets aside its previous position requiring such reviews.

Nevertheless, the Court is displeased with Commerce's attempt to addresses the earlier reviews' lack of official standing by conducting the update review after a baffling twelve years. The Court cautions Commerce to conclude future revocations in a more timely manner, perhaps by promulgating appropriate regulations to ensure the efficient and logical end to antidumping proceedings with respect to parties not in violation of the statute.

### Conclusion

In accordance with the foregoing opinion, Commerce's and Honda's motions for reconsideration of the Honda issue are granted. Upon reconsideration, the Court sets aside the portions of its opinion and order in *Timken*, 21 CIT ——, 989 F.Supp. 234, remanding for Commerce to investigate possible dumping of relevant Honda TRB sales during the period April 1, 1993, through March 31, 1997, and sustains Commerce's revocation of the dumping finding with respect to Honda. The remainder of the Court's opinion and order in *Timken*, 21 CIT ——, 989 F.Supp. 234, is affirmed.

### *ORDER*

These motions having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

· **ORDERED** that the Department of Commerce, International Trade Administration's ("Commerce") and American Honda Motor Co., Inc., Honda of America Mfg., Inc. and Honda Motor Co., Ltd.'s (collectively "Honda") motions for reconsideration are granted; and it is further

**ORDERED** that the portions of the Court's opinion and order remanding for Commerce to investigate possible dumping of relevant Honda tapered roller bearing sales during the period April 1, 1993, through March 31, 1997, in *Timken Co. v. United States*, 21 CIT ——, 989 F.Supp. 234 (Dec. 3, 1997), are set aside; and it is further

**ORDERED** that Commerce's revocation of the dumping finding with respect to Honda is sustained; and it is further

**ORDERED** that the remainder of the Court's opinion and order in *Timken*, 21 CIT ——, 989 F.Supp. 234, is affirmed.